[Crim. No. 251.   Third Appellate District.—May 23, 1914.]

## THE . PEOPLE, Respondent, v. ANTONE BONZANI, Appellant.

CRIMINAL LAW—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT—
REVERSAL ON APPEAL.—Under the constitutional provision that courts
of appeal shall exercise, on questions of law alone, appellate juris-
diction in all criminal cases prosecuted by indictment or information
in a court of record, excepting criminal cases where judgment of
death has been rendered (Const., art. VI, sec. 4), it follows that,
unless the evidence upon which the verdict in a criminal case has
been planted is, upon its face, incredible or inherently improbable,
and is in all other respects sufficient to support the verdict, a re-
versal of the judgment or an order refusing a new trial upon the
ground that the evidence does not support the verdict is not
allowable.

ID.—RAPE—TESTIMONY OF PROSECUTRIX—WHETHER INHERENTLY IN-
CREDIBLE.—In this prosecution for rape the testimony of the prose-
cutrix is not as a whole so inherently incredible as to be unworthy
of belief and insufficient to sustain a conviction.

ID.—ADMISSIONS OF PROSECUTRIX—INCONSISTENCY WITH TESTIMONY AT
TRIAL.—The testimony of the extrajudicial statements of the prose-
cutrix, made after the commission of the alleged crime and appar-
ently inconsistent with the theory that the defendant accomplished
the act by the use of force is, like all other testimony not unreason-
able upon its face, for the jury's consideration, to be by them given
such weight as they conscientiously believed it to be justly entitled
to.

ID.—FEAR OF PROSECUTRIX—IMPAIRMENT OF POWER TO RESIST.—In a
rape case it is always with the jury to say, where there is some cred-
ible evidence of the fact, whether the female was, at the time of the
assault possessed of such fear as would likely have the effect of im-
pairing, if not altogether destroying, her ability to so resist her
assailant as to prevent actual intercourse.

ID.—CORROBORATION OF PROSECUTRIX—NECESSITY AND SUFFICIENCY.—
While it would always be more satisfactory, in rape cases, if testi-
mony other than that of the prosecutrix supporting or tending to
support her story were available and submitted to the jury, still
a verdict of conviction may nevertheless stand on her testimony
alone, for the law does not require her to be corroborated to support
the charge; but in the case at bar her testimony is corroborated by
her departure from the scene of the offense immediately . after its
commission and by her then physical and mental condition.

Id.—Remark of Court and Juror as to Guilt of Defendant—Consideration on Appeal.—The statement of a juror while in court for further instruction that he thought the "defendant was guilty to a certain extent," and the remark of the judge when pronouncing judgment that he "had some little question about the technical violation of the law" by the defendant, should not be considered in determining the question whether the verdict is, as a matter of law, sufficiently supported.

Id.—Proof That Prosecutrix Not Wife of Defendant.—Proof that the prosecutrix is not the wife of the defendant is sufficiently proved, without any direct evidence on the point, where the defendant testifies that he is a married man and that his wife is in Italy, and it further appears that the prosecutrix had known the defendant only two or three weeks and that their names were different.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

G. A. Whitehurst, and A. J. Carlson, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was informed against by the district attorney of Stanislaus County for the crime of rape and upon his trial was by the jury adjudged guilty of said crime. This appeal is by the defendant from the judgment.

The principal point upon which a reversal of the judgment is urged is that the evidence is insufficient to justify the verdict.

The alleged crime was committed on a ranch situated about a mile north of Crow's Landing, in Stanislaus County, on the twentieth day of August, 1913. The prosecutrix, or the female with and upon whom the crime charged is alleged to have been perpetrated, is one Mrs. Bell de Bell. At the time of the commission of the alleged crime, she was about fifty years of age and was of unusual corpulency, weighing, as she testified, about two hundred and twenty pounds.

The defendant is an Italian, and, at the time of the occurrence which is the foundation of the charge in the information, was able to speak the English language only to a very

limited extent, yet, when essaying a conversation in that language, he was generally able, by means of signs and gesticulations suitable to thoughts which he desired to express or convey, to make himself understood with reasonable facility and clearness.

The ranch at which the alleged crime was committed was owned by the "Paul Crow Stock Company," presumably a corporation, and it was used for the purpose of a dairy business. The first husband of the prosecutrix was named Crow, and she was the mother of two children—one a son who had attained manhood's estate, and a married daughter, a Mrs. Larkins. The son of the prosecutrix was in immediate control of the ranch and the dairy business thereon conducted, but, at the time of the commission of the crime charged against the defendant, he was absent from home and Mrs. de Bell was temporarily in charge. Mrs. Larkins did not reside on the ranch. Mrs. de Bell's usual and principal occupation was that of cooking for persons employed on the ranch.

The defendant, it appears, entered into the employment of the company, at said ranch, on the first day of August, 1913, and his duties were to milk about thirty head of cows, separate the cream, and feed the hogs and calves. Thus, as is apparent, he was employed for nineteen days prior to the day upon which he is alleged to have committed the crime charged in the information.

The defendant and the prosecutrix were alone on the ranch when the crime charged was committed, and were, consequently, the only immediate witnesses thereto. It is, therefore, manifest that the jury, in reaching the conclusion represented by their verdict, were mainly influenced by the testimony of the prosecutrix.

The defendant admitted, not only upon the witness stand at the trial, but at the time of his arrest, that he had had sexual relations with Mrs. de Bell on the day named in the information, but insisted that such relations were sustained with her consent. On the other hand, the prosecutrix at all times declared that the defendant accomplished the act of sexual intercourse with her by means of force and violence and against her will and consent; that, without avail, she resisted him with all the physical force of which she was capable.

Her story, as given at the trial, is, in substance, as follows: That, on the fifteenth day of August, 1913, after supper had been partaken of, she went out on the porch of her house. There were then no other persons at the ranch but the defendant and herself, her son having left the ranch earlier in the day. While she was sitting on the porch, the defendant approached her and attempted to take liberties with her, taking hold of her knee and hand. She vigorously protested against these liberties, saying to him: "Will you please keep your hands off me," whereat he bade her "good night" and departed for the "bunk" in which he slept. This conduct on the part of the defendant inspired the prosecutrix with fear of him, and on the following night (Saturday), she went to a neighbor's house and there remained until early the next morning, when she returned to her home and prepared breakfast for the defendant. On that evening—Sunday, August 17—while she was standing on the porch, the defendant repeated his previous conduct toward her and caught hold of her arm. She then said to him: "Take your hands off me; . . . don't you put your hands on me again. I am here alone and I want you to be a gentleman and I am a lady and want to be treated as such." The defendant then released his hold on the prosecutrix and stepped back, at the same time remarking: "You a strong woman," to which she replied: "Don't put your hands on me again," whereupon he left for his sleeping apartment.

On the twentieth day of August, the defendant and the prosecutrix ate supper together between the hours of 7 and 8 o'clock P. M. After they had finished supper, the defendant remained in the dining room, but the prosecutrix stepped out on the porch. She shortly returned to the dining room, and after going in and out of the house several times, she handed the defendant a cigar, after which, while she was standing near the door leading to the porch, the former grabbed her by the arm and attempted to force her further into the house. She resisted him with all her physical power and succeeded in getting out on the porch, he still clinging to her. She begged him to cease his hold upon her and to let her alone, but he still clung to her, finally catching her by the shoulders and throat and throwing her upon a couch, which was then on the porch and upon which the prosecutrix had occasionally

slept. Thus getting her down on the couch, the defendant held her by the throat with one hand and attempted to raise her clothes with the other. He threw his body upon hers, and, after considerable wrestling between the two, he arose and, while holding her down with one foot, disrobed himself, after which he renewed his efforts to force sexual connection with her and finally succeeded. She testified that he inserted his privates into hers, but said that the penetration did not extend beyond an inch. After accomplishing sexual relations with the prosecutrix, the defendant left the house and repaired to his "bunk." Shortly thereafter, Mrs. de Bell left the premises and started to go to the home of a neighbor, one Ora Munson, whose house is situated about one mile distant from her own home. She testified that during all the time that the defendant was engaged in prosecuting his assault upon her she was convinced, from the appearance of his face, that he was determined to accomplish his purpose at any cost; that, consequently, she labored under the fear that he might inflict upon her great bodily injury, if, indeed, he did not take her life. She declared that he choked her and held on to her arm with such tenacity and violence as to cause bruises thereon, and that the bruises so caused did not entirely disappear until shortly before the trial. As soon after the assault as it was practicable for her to do so, she caused word to be conveyed to her son and daughter, by telegraph, that she desired their presence at the ranch at once.

The witness, Munson, to whose home the prosecutrix started immediately after she was assaulted, testified that, at about eleven o'clock of the night of the 20th of August, he was awakened by the scream of a woman, and that he thereupon and immediately arose from his bed, went outside the house and listened. The sound of the voice seemed to come from the direction of Mrs. de Bell's house, and Munson hurriedly dressed and ran across his field in that direction and met the prosecutrix walking through said field. She was then approximately an eighth of a mile from the witness's house. "She was in a very exhausted and excited state," said Munson. "In fact," he continued, "she swooned down to the ground when I met her and she lay on the ground a minute or two before I could help her up. I assisted her to my house and let her rest awhile and put her in my car and drove to Crow's

Landing, to the hotel, and summoned Mrs. Oswald, in whose charge I left her."

Mrs. Alice Oswald, proprietress of the hotel at Crow's Landing, testified: That Mrs. de Bell was brought to her hotel, at about 11:30 o'clock on the night of the 20th of August, in an exhausted condition, or, to use the precise language of the witness, "she was completely gone up"; that she assisted Mrs. de Bell to bed and later gave her a hot bath; that the prosecutrix remained in bed all of the succeeding day; that she (witness) examined Mrs. de Bell's clothing and found that they were "full of his (defendant's) filth."

Dr. F. H. Gates, a physician, testified that, on the morning of August 21, he professionally visited Mrs. de Bell, at Mrs. Oswald's hotel, and that he found her in bed, suffering from "extreme shock, both mentally and physically"; that he discovered a bruise upon her upper left chest. The doctor prescribed a treatment for her nervous condition.

The witnesses, Davis and J. E. Newsome, testified that the defendant, after his arrest, admitted to them that he had had sexual connection with Mrs. de Bell at the time stated in the information.

No other testimony than that of which the foregoing is a brief epitome, except the deposition of the prosecutrix taken at the preliminary hearing of the charge before a magistrate and her rebuttal testimony contradicting certain statements involved in the testimony of the defendant, was submitted by the people to the jury.

The first and the principal question with which we are concerned on this appeal is: Is the evidence upon which the verdict was obviously predicated and of which the above statement involves a fair synoptical resumé, so deficient in probative force as to justly justify this court in declaring, as a proposition of law, that it is incapable of upholding or sustaining the verdict? In other words, is this court warranted in holding that the testimony of the prosecutrix appears upon its face to be wholly unworthy of belief and that the jury were not, therefore, justified in returning a verdict of conviction?

Manifestly, in answering the question thus propounded, it is not within the province of this court to consider adversary testimony, or the testimony presented by the defendant con-

tradicting that produced by the people. The constitution declares that the courts of appeal shall exercise, *on questions of law alone,* appellate jurisdiction in all criminal cases prosecuted by indictment or information in a court of record, excepting criminal cases where judgment of death has been rendered. (Const., art. VI, sec. 4.) From that provision of our organic law, it follows that, unless the evidence upon which a verdict in a criminal case has been planted is, upon its face, incredible, or is inherently improbable, and it is in all other respects sufficient to support the verdict, a reversal of the judgment or an order refusing a new trial upon the ground that the evidence does not support the verdict is not allowable.

But, before taking up the proposition vigorously pressed by the defendant and upon which is mainly founded his claim of right to a reversal, it is only fair to refer briefly to the testimony submitted to the jury in support of his defense.

As before stated, the defendant, while admitting that he had carnal connection with Mrs. de Bell on the occasion specified in the information, denied that it was accomplished by a resort by him to force or violence. Indeed, he asseverated at all times that the act was not only consented to by the prosecutrix, but that it was virtually the result of her own solicitation. The witnesses, McGinnes and E. T. Newsome, gave testimony of certain extrajudicial statements made by Mrs. de Bell, after the assault, and which tended to discredit her testimony and to show that the sexual relations between her and the defendant were freely consented to by her. Thus it appears, as generally it so appears in all cases of contested issues of fact, that there is a decided conflict in the evidence upon the question of the alleged criminal culpability of the accused.

The testimony of the extrajudicial statements of the prosecutrix, made after the commission of the assault, and which statements bear the appearance of being inconsistent with the theory that the defendant accomplished the act by the use of force, was, like all other testimony which is not unreasonable upon its face, for the jury's consideration, to be by them given such weight as they conscientiously believed it to be justly entitled to. It was, in other words, for the jury to say: 1. Whether the testimony disclosing the alleged incon-

sistent statements was truthful; 2. Whether, if truthful, the statements so made were, when carefully scrutinized, actually inconsistent with the testimony of the prosecutrix at the trial; and, 3. If inconsistent, whether they should be accepted in the place of her sworn testimony or in impeachment thereof. As is said in the leading California case upon the question of the province and power of juries in criminal cases—*People* v. *Durrant*, 116 Cal. 179, 200, [48 Pac. 75, 79] : "If a witness should absolutely discredit his own testimony by swearing to opposite statements so that one or the other must be false, under our laws his testimony is not of necessity to be rejected. It is still evidence in the case. Under such circumstances the jury must receive and weigh it. They are bound to look upon it with suspicion and distrust, and *may* reject it. But, upon the other hand, they may as they determine accept as true one or the other of the contradictory asseverations. Thus, upon a review of the evidence by this tribunal, we may not examine with minuteness claims that witnesses are discredited, or that their testimony is unworthy of belief, or look to see whether some other conclusion might not have been warranted by the evidence. (*Blythe* v. *Ayers*, 102 Cal. 254, [36 Pac. 522].) *Ad questionem juris respondeant judices, ad questionem facti respondeant juratores:* and than this no maxim of the old law has been more carefully preserved in its integrity under our system. Where it is not clear that the verdict must have been rendered under the influence of passion or prejudice, our examination of the record is only to determine whether legal evidence has been offered sufficient to warrant a conviction, for the verdict of the jury is their declaration that it is this evidence which has been by them accepted," citing many cases.

But the force of counsel's argument in support of their position that the verdict is without the necessary support to uphold it is directed against the testimony or story of the prosecutrix. It is vigorously insisted that her testimony is intrinsically incredible, and that, as without her testimony the verdict, manifestly, cannot stand, it is within the legal power and, indeed, the duty of this court to nullify or set aside the result reached by the jury. To support this position, counsel for the defendant, in their briefs, subject the testimony of the prosecutrix to an analytical and critical exam-

ination, emphasizing certain apparent weaknesses and asserted inconsistencies in various parts of her story and her conduct on the occasion of the commission of the act. It is, in the first place, pointed out that she was, when the crime charged was perpetrated, a large, vigorous woman, weighing about two hundred and twenty pounds, and, therefore, fully capable, physically, of so resisting the force invoked by the defendant, whatever it might have amounted to, as to have prevented the accomplishment by him of actual intercourse or even the slightest penetration. It is further pointed out, as conduct inconsistent with the story that the act of the defendant was accomplished without her consent, that, after the first assaults by the defendant—on the 15th and 17th of August— the prosecutrix still remained on the ranch alone with the accused. The fact is also emphasized that, a few moments prior to the assault on the 20th of August; she gave the defendant a cigar, the inference from that fact being, so the argument goes, that she entertained a kindly rather than an unkindly feeling toward him, or, in other words, that she nursed no feeling of resentment against his former conduct toward her. The statement of the prosecutrix that the defendant held her down on the couch by means of one of his feet while, at the same time, he was engaged in the act of disrobing himself, is likewise characterized as absurd and wholly unbelievable, and that it imparts to the whole story related by the prosecutrix the fatal infirmity of innate untruthfulness. These and other statements, which may seem to give some color to the theory that the verity of the story of the prosecutrix is questionable, conclusively show, it is urged, that her testimony is, upon its face, wholly unbelievable, and that, therefore, it is within the legal competence of this court so to hold.

But we cannot say that the story told by Mrs. de Bell, viewing it as a whole, is inherently improbable. While it is true that she is or was then a woman of unusual obesity, it does not appear, aside from that fact, that she was of great strength and physical vigor. It does not necessarily follow that, because a person may be of extraordinary avoirdupois, he is possessed of corresponding or even approximately corresponding physical strength and vigor. On the contrary, it is known to be frequently true that where avoirdupois amounts to obesity or to the development of flesh out of proportion

to the human body or frame, a deterioration in strength and the want of physical vigor and endurance follow. Mrs. de Bell testified that she resisted the defendant with all her power and, by every means available to her, attempted to prevent him from accomplishing sexual relations with her. Moreover, she testified that she was very much frightened—in fact, so determined to accomplish his purpose did the defendant appear to be, she said, that she was in constant fear that he would inflict upon her serious bodily injury or perhaps might take her life. She described his appearance at the time as that of a man with a fixed determination to accomplish at any cost the act upon which his mind was set. He clutched her by the throat and thus held her until he had effected a penetration of her private parts. Men often become demons on such occasions or while attempting an outrage by force upon the opposite sex, and it is not to be wondered that, under the circumstances as she described them, dreadful, as they were, in the extreme, the prosecutrix should have become greatly terrorized, and so become bereft of her physical courage and strength. Often has it been said, as the effect of the argument is here, that it would ordinarily be impossible for a man to accomplish the act of sexual intercourse with a female of mature years against her will and consent—that but slight resistance on her part would ordinarily be sufficient to prevent the accomplishment of the act. This theory is plausible, in the abstract, and perhaps may be sustainable in those cases where it is made to appear that the female, during the unsavory combat, has succeeded in preserving her courage or a mental attitude which has enabled her to maintain and apply her full normal power of resistance; but it is obviously true and is often the fact, as the jury by the evidence was authorized to believe was so in this case, that a person, when enveloped by appalling circumstances, will lose his courage and with it his normal strength and so become practically helpless in the hands of one who may have a criminal or sinister design which may be the more readily executed when his victim is reduced to that condition. This proposition is recognized by our law in the case of robbery, which, as so defined, is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force *or fear.*" (Pen.

Code, sec. 211.) And the proposition may be said to be particularly true in cases of rape where the assaulted party is of the weaker sex. So, in all such cases, of which this is typical, since there is evidence in the record tending to show that the prosecutrix was much frightened and terrified, it is always with the jury to say, where there is some credible evidence of the fact, whether the female was, at the time of the assault, possessed of such fear as would likely have the effect of impairing, if not altogether destroying, her ability to so resist her assailant as to prevent actual intercourse.

As to the fact that she remained on the ranch alone with the defendant after his first attempted familiarities with her, Mrs. de Bell explained that, at that time, there was then no other person than herself to look after the ranch and the dairy business and that she, therefore, felt impelled to remain there, although she was in constant fear of the defendant. We perceive nothing so unreasonable in this explanation as to justify us in holding that the jury should have repudiated it, nor is there anything in the fact of her remaining on the ranch under the circumstances indicated, as so explained, which renders her testimony in the main unreasonable or improbable, *per se.*

Referring to the circumstance of the giving of a cigar to the defendant by her, a few moments prior to the attack made upon her, Mrs. de Bell explained that, after she and the defendant had finished supper, he remained in the dining room and displayed no disposition to depart therefrom, and that, being in fear of him from his previous actions toward her, she was anxious for him to leave the house and go to his "bunk." She further explained that she had observed that he was fond of smoking, and that, in the belief that thus he would be led to go outside for the purpose of smoking it, she gave him the cigar. It was for this reason and no other, she asseverated, that she gave him the cigar. This explanation is not, upon its face, unreasonable, and, therefore, the circumstance of the giving of the cigar to the defendant, as so explained, cannot be held to stamp the essentially vital parts of the story of the prosecutrix as improbable. It was, in other words, for the jury to determine whether the motive of the prosecutrix in giving the defendant the cigar was that of friendliness or a desire to encourage his attentions, or whether

her explanation of that circumstance was truthful or sufficiently reasonable to justify them in accepting it.

But there are some other circumstances, of which testimony was received, and to which we may now briefly advert, which apparently stand in strong corroboration of Mrs. de Bell's version of the occurrence.

It may first be observed that, while, admittedly, it would always be more satisfactory if, in cases of rape, where guilt actually exists, testimony other than that of the prosecutrix supporting or tending to support her story were available and submitted to the jury, a verdict of conviction in such cases may, nevertheless, stand on her testimony alone, for the law does not require her to be corroborated to support the charge. In this case, however, as stated, the prosecutrix appears to have been corroborated by the circumstance that, at a late hour of the night of the assault, and a few hours after it took place, she stealthily, or unknown to the accused, fled from her home, with the intention of going to that of a neighbor—Ora Munson. When a short distance from the latter's home, she began screaming, which was heard by Munson, then in bed, who hastily proceeded out into his field, in the direction from which the sound of her voice came, and found her suffering from what appeared to be a severe nervous shock. Munson at once conveyed her to the hotel of Mrs. Oswald, at Crow's Landing, where she remained in bed for over twenty-four hours, suffering, so the doctor called to attend her stated, from severe physical and mental collapsion, due to an extreme nervous shock. The jury were warranted in concluding that her condition, thus described, was the consequence of her previous terrible experience with the defendant, and, as so viewing that circumstance, could justly have held it to be, as undoubtedly they did so regard it, strongly corroborative of the story as told by the prosecutrix on the witness stand, for it is hardly conceivable that, were it true that she freely and voluntarily assented to the act of sexual intercourse with the defendant, she would have left her home at the dead hour of the night under the circumstances as shown and have revealed to others the fact of her illicit relations with the accused or that such a condition of mind and body as she was found to be in only a few hours after the act had been committed would have developed.

But it is earnestly suggested that the legal integrity of the verdict was questioned not only by the court below but by one of the jurors, and that these circumstances should be considered by this court in connection with its consideration of the question whether the verdict is, as a matter of law, sufficiently supported.

It appears that, after retiring and deliberating for a time upon the case without reaching a conclusion, the jury were returned into court, to be further instructed and their minds refreshed as to certain testimony. While thus in court, one of the jurors asked the court what the penalty would be in the event that a verdict of guilty was reached, saying that he thought the ''defendant was guilty to a certain extent.'' It further appears that, when pronouncing judgment on the verdict, the judge remarked that he ''had some little question about the technical violation of the law'' by the defendant. Upon both these propositions counsel lay considerable stress. But they possess no importance and can justly exercise no influence in the determination of the question of the propriety or impropriety, legally, of the verdict.

Precisely what the juror meant by the opinion expressed by him that the defendant was guilty only to a limited extent, we are unable to divine. It may be that he intended to say that at that particular moment he was of the opinion that the defendant's conduct, as he viewed it through the evidence before him, amounted to nothing more than a futile attempt to commit the act. Certainly, after listening to the charge of the court, it is not for an instant supposable that, accepting the testimony of the prosecutrix that the defendant accomplished only a partial insertion of his privates, he conceived or, rather, misconceived it to be in accord with the law to measure the degree of the defendant's criminal culpability by the extent of the penetration accomplished. But, whatever may have been the idea at the base of the opinion so expressed, the important fact remains that, after again retiring for deliberation upon the case, a verdict of guilty was reached, and the presumption is that it was arrived at only upon a fair and impartial consideration of the evidence under the rules of law as declared to the jury by the court.

As to the statement of the judge, above referred to, it is to be said that, if thereby he intended to express a doubt as to

the guilt of the accused under the evidence, then what is said in *People* v. *Brecker*, 20 Cal. App. 205, 209, 210, [127 Pac. 666, 669], where a similar proposition arose and was considered, constitutes a reply to the intimation here that by said statement this court should be to some extent governed in determining whether the verdict should be upheld. In that case it is said: "A judge may and in many cases doubtless does have *some doubt* as to whether a verdict of guilty should have been returned, and yet such doubt might not be sufficient to generate an unequivocal opinion that the verdict was not justified, and when the court is not of an opinion of that character as to a verdict of guilty, it has no right to grant a new trial or to permit a *doubt* not sufficient to create such an opinion to override the functions which are, under our law, peculiarly those of the jury. . . . We have a right to presume, from the fact that the motion for a new trial was denied, that the doubt of the court as to the justification of the verdict did not reach the dignity of such an opinion of the jury's conclusion as to warrant it in setting aside the verdict. We must assume, in other words, that had it entertained such opinion, it would have promptly done its duty by granting a new trial."

The only other point urged for a reversal is that the people failed, so it is claimed, to prove that the prosecutrix was not the wife of the defendant. That it is essential in and incumbent upon the people to plead and prove, in cases of rape, that the female upon whom the crime is alleged to have been committed is not the wife of the accused, is an elementary proposition in this state, and we think that the people in this case sufficiently discharged the burden thus imposed.

There is, it is true, no direct testimony upon that point. The defendant testified, however, that he was a married man and that his wife was in Italy. This testimony, considered in connection with the fact that Mrs. de Bell had known the defendant but a little beyond a half a month before the assault was committed, and the further fact that the names of the prosecutrix and the defendant are not the same, is sufficient to justify the inference that they were not husband and wife when the crime alleged took place, and the presumption arising from the verdict is that the jury drew such inference from the testimony and that thus they were convinced beyond a

reasonable doubt that they were not husband and wife at that time.

We have carefully scrutinized the record and have failed to find any legal reason for disturbing the verdict.

The judgment is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.