[Crim. No. 1156.   Second Appellate District, Division Two.—January 30, 1925.]

THE PEOPLE, Respondent, v. DON HOLMES, Appellant.

[1] CRIMINAL LAW—RAPE—RESISTANCE—EVIDENCE.—In this prosecution upon a charge of having committed the crime of rape in violation of the provisions of subdivisions 3 and 4 of section 261 of the Penal Code, the evidence was amply sufficient to support the charge by the prosecution under both subdivisions.

(1) 33 Cyc., p. 1490, n. 45.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. E. A. Luce, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Shreve, Dorn & Shreve & Tyler for Appellants.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was charged by information with having committed the crime of rape in violation of the provisions of subdivisions 3 and 4 of section 261 of the Penal Code, and was also charged jointly with one Yetta Ratiate with having contributed to the delinquency of a girl under the age of twenty-one years.   Both defendants were convicted by a jury, and this appeal is taken from the judgment and order denying a motion for new trial upon the charge of rape.

The portions of said section which are relied upon by respondent read as follows:

"Rape is an act of sexual intercourse, accompanied with a female not the wife of the perpetrator, under either of the following circumstances:

"    . . .

"3. Where she resists, but her resistance is overcome by force or violence;

"4. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, . . . "

[1] Appellant's contention in his brief is that the prosecutrix cohabited with him continuously for a period of about two years from March, 1922, until the fourteenth day of May, 1924, and that from that fact, coupled with all the evidence in the case, he succeeded in proving that there was no resistance, or prevention of resistance accompanied by apparent power of execution; that such a condition of depravity was shown to have existed that the jury concluded, contrary to the evidence, that he "should be in the penitentiary regardless of the fact that he had not committed the offense alleged." It is argued that the testimony of the prosecutrix was so inherently improbable and unworthy of belief that it should have been rejected, and that without it there was no proof of the exercise by appellant of any force or violence toward her.

The only authority attempted to be cited by appellant is section 4½ of article VI of the constitution, which he contends has been violated in spirit and intent, by the failure of the trial court to grant him a new trial. This section provides that "no judgment shall be set aside or new trial granted, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." It is suggested that a proper understanding of the case requires a careful review of the entire record, in order to obtain an adequate and comprehensive knowledge of the facts. We are in accord with appellant's admonition, but are unable to conceive of a jury rendering a different verdict upon the sordid state of facts presented in this case.

Appellant's only defense consisted of an uncorroborated denial of the testimony of six witnesses, of documentary evidence and of circumstances, all of which tended to support the testimony of the prosecutrix in every material re-

spect. She had been reared upon a farm in the state of Washington, to the age of fourteen, when she left home, and when appellant met her on the streets of Los Angeles one evening in June, 1922, she was apparently without experience, and without friends. Appellant was an itinerant painter, who was traveling from place to place with a common-law wife whom he hastily married in Imperial County about five days after the commission of the offense with which he is here charged. It was testified by the prosecutrix, and by others, including disinterested witnesses who conducted road camps, that appellant traveled by automobile and slept in the same bed with both women for a period of two years; that he prevented other people from conversing with the prosecutrix, that he cursed her, compelled her to lift heavy trunks and ladders, and struck her; his consort joined him in preventing the girl's escape. One or the other held her when she attempted to leave them, and on at least two occasions sought her out and compelled her to return when she had obtained employment through the assistance of strangers whom she importuned to befriend her. Appellant attacked one Foughty for talking to the prosecutrix, striking him on the head with a board or club, and tried to shoot him, and it was during an altercation that officers were notified, which resulted in this prosecution.

Appellant had originally promised to carry the prosecutrix to her mother in Washington, according to her testimony, but as they approached the northern part of this state he would turn back; she would ask him when he expected to take her home, and he would offer some excuse. It appears from all the evidence that she was kept under constant surveillance, was enslaved and abused; that she was in fear of both the appellant and of his paramour; she testified that she hated him from the first, and that she fought him whenever he insisted upon illicit relations with her. Men who had traveled with them testified that at the times the prosecutrix was so severely mistreated by appellant that she would sob, and become hysterical; in March, 1924, she gave birth to a child, and she testified that appellant had intercourse with her two days thereafter, when she was ill.

On May 14, 1924, the night of the alleged offense, appellant was driving toward a camp in San Diego County, unaccompanied except by the prosecutrix; it appears that other

members of the camp were driving another machine ahead
of them. The girl swore that he stopped the car by the
roadside, dragged her from the machine, and after a struggle
succeeded in committing the offense. She stated that she
fought him with all her strength, but that since the birth
of her baby she had been weak; that he would hold her
arms at times, so that she could not move; that he threw
her down, and tore some of her clothes to pieces; that
thereafter he admonished her to tell others at the camp that
he had been delayed by tire trouble. Foughty testified that
the prosecutrix on the following day complained to him of
appellant's cruelty, and told him of this latter occurrence.

Appellant testified in his own defense, making a complete
denial of the use of profanity and tyranny toward the prose-
cutrix, although a careful review of the testimony of various
witnesses shows convincingly that such conduct by him was
common. He denied having written her from the county
jail after his arrest, or having given letters to Edward
Bishop; yet Bishop testified that he was confined in the jail
with appellant for a time, and that on May 25, 1924, he
wrote two letters "word for word" as dictated to him by
appellant, and that the latter signed them; that appellant
cautioned him that when released he should be very careful
in smuggling them out of the jail, because if found they
would go against appellant. These letters were taken
from Bishop by the jailer and were produced in evidence.
One was addressed to a woman by the name of Thompson,
saying, among other things: "You do all in your power
to turn Hazel to drop these charges against me and my
wife." "Do all you can to get her away." The other letter
was addressed to the prosecutrix, stating: "I want you to
do everything I say"; "Hazel, the best thing you can do
is to drop these charges and skip out of the country";
"Don't tell anybody about my forcing you to do anything
with me." Bishop testified that he wrote them for appellant
because the latter was very nervous; that he told the witness
to take the letters to prosecutrix and talk to her, to "see if
you cannot get her out of the country."

Respondent relies upon *People* v. *Bonzani*, 24 Cal. App.
549 [141 Pac. 1062]. The comparative strength of the
parties was there an issue, it appearing that the woman
was unusually large, while the prosecutrix in the case at

bar was a slender girl weighing but 123 pounds. It was said in that case, however: "It does not necessarily follow that, because a person may be of extraordinary avoirdupois, he is possessed of corresponding or even approximately corresponding physical strength and vigor. . . . Mrs. de Bell testified that she resisted the defendant with all her power and, by every means available to her, attempted to prevent him from accomplishing sexual intercourse with her. Moreover, she testified that she was very much frightened—in fact, so determined to accomplish his purpose did defendant appear to be, she said, that she was in constant fear that he would inflict upon her serious bodily injury or perhaps might take her life. She described his appearance at the time as that of a man with a fixed determination to accomplish at any cost the act upon which his mind was set."

And, in announcing the rule, it was further said: "So, in all such cases, of which this is typical, since there is evidence in the record tending to show that the prosecutrix was much frightened and terrified, it is always with the jury to say, where there is some credible evidence of the fact, whether the female was, at the time of the assault, possessed of such fear as would likely have the effect of impairing, if not altogether destroying, her ability to so resist her assailant as to prevent actual intercourse."

In the instant case the prosecutrix was confronted by two persons with whom she was compelled to contend much of the time, and experience had evidently convinced her that resistance was hopeless, and was usually productive of dire results. This fact, coupled with her delicate condition so soon after confinement, was sufficient to authorize the jury to conclude that her physical powers were of little avail as against the efforts of a man of ordinary strength. Appellant admitted that upon one occasion he knocked Foughty down, and from his continued life in the open, and the nature of his vocation, it is apparent that he possessed at least an average physique. It cannot be successfully denied that the jury was justified in believing that he perjured himself upon many of the material facts testified to by all the other witnesses, and from the entire record we think the jury was justly convinced that he falsified as to the one vital issue in the case. He emphatically denied under oath that he had ever had intercourse with the prose-

cutrix, yet it is conceded, and argued by his counsel as a ground for reversal, that appellant's cohabitation with her for a period of about two years was conclusive evidence of the absence of force or resistance.

We think the proof was amply sufficient to support the charge by the prosecution under both subdivisions 3 and 4 of section 261 of the Penal Code, and the judgments and orders denying motion for a new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.