## M. LETTERS, *alias* M. CADY, *v.* H. D. CADY.

Living together *as* man and wife is not marriage, nor is an agreement so to live a contract of marriage.

Where the plaintiff averred in her complaint, in a suit brought for her distributive share of the estate of an alleged deceased husband, that the deceased made proposals of marriage to her, which she accepted, and consented to live with him *as* his true and lawful wife ; and that, in accordance with his wishes, she thenceforth lived and cohabited with him *as* his wife, always conducting herself *as* a true, faithful, and affectionate wife should do :   *Held*, that these were insufficient averments of the existence of a marriage, and that the facts averred were only *prima facie* evidence of marriage

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

This is an action brought by the plaintiff, claiming to be the

widow of W. J. Cady, deceased, for her distributive share of his estate, under the Statute of Distributions.

In her original complaint, the plaintiff alleged that "heretofore on the — day of ———, 1853, to wit, in the county aforesaid, (Nevada,) by mutual contract between W. J. Cady and herself, they entered into the relation of husband and wife."

Upon being allowed to amend her complaint, the plaintiff struck out the above averment, and inserted the following: "That heretofore, to wit, on the — day of ———, A. D. 1853, at, to wit, in the State of California, the said plaintiff was keeping a restaurant and public saloon in the city of Grass Valley, in the county of Nevada, and had been so engaged for several months previously; that in said business she had accumulated money to the amount of five or six hundred dollars, besides property of the value of some five hundred dollars.

"Plaintiff further represents that on the day and year first above mentioned, while engaged in the business aforesaid, W. J. Cady, brother of the present defendant, made proposals of marriage to her, which proposals she accepted; and in accordance with his expressed wishes, consented to relinquish her then business, sell out her property, and live with him as his true and lawful wife; that in obedience to this request on his part, she did abandon her business, and by his aid and assistance sell out and dispose of her said property, and give the proceeds thereof to him, and from thenceforth lived and cohabited with him as his wife, always conducting herself as a true, faithful, and affectionate wife should do."

To the amended complaint the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action.    The point made was, that the complaint did not contain any averments of marriage of the plaintiff with the deceased. The Court sustained the demurrer, and dismissed the suit.

From the judgment, the plaintiff appealed.

*Hawley* for Appellant.

The District Court erred in sustaining the demurrer filed to the amended complaint, and in dismissing the action.   Sanford et al. *v.* Head et al., 5 Cal. R., 297; Wood's Dig. of Cal. Statutes, p. 423, Art. 2359; Graham *v.* Bennett, 2 Cal. R., 503; Funton *v.* Reed, 4 John. R., 52; Starr *v.* Peck, 1 Hill R., 270; Huntz *v.* Sealy, 6 Binney, 408; Donnelly *v.* Fisher, A. K. Marsh. R., 368; Bishop on Marriages, §§ 63, 66, 67, 90, 152; Atkinson *v.* Leonard, 3 Barch. R., 218; East Ind. Co. *v.* Baddam, 9 Ves. R., 468; Bronely *v.* Holland, 7 Ves. R., 19; Ex parte Greenway, 6 Ves. R., 812; 1 Story's Eq. Jur., § 64; N. Y. Insur. Co. *v.* Ronlet, 24 Wend. R., 505; Smith *v.* Wycoff, 11 Paige Ch. R., 50; 1 Story Eq. Jur., §§ 463, 41, 75, 6; People *v.* Houghtaling, 7 Cal. R., 348; 2 Story's Eq. Jur., §§ 1041, 1196, 1207, 8; Deker *v.* Somers,

2 Mylne and Keen, 666; 1 Story's Eq. Juris., §§ 683, 624, 630; Patterson et al. *v.* Gaines et al., 6 How. U. S. R., 550; Gaines et at. *v.* Chew et al., 2 How. U. S. R., 619.

*John R. McConnell* for Respondent.

The complaint does not sufficiently aver a marriage.

Instead of alleging *in totidem verbis* a marriage between the deceased and plaintiff—the amended complaint proceeds to detail a long chain of circumstances which may be good *prima facie* evidence of a marriage, but do not *per se* constitute a marriage.

For instance, the complaint informs the Court that the plaintiff was engaged in keeping a restaurant and public saloon in Grass Valley, and that she had made a considerable sum of money by this business; that deceased made proposals of a matrimonial nature to her, which she accepted, and consented to live with him " as his true and lawful wife ;" that in accordance with such arrangement, she suspended her business, sold her stock in trade, " and from thenceforth lived and cohabited with him as his wife, always conducting herself as a true, faithful, and affectionate wife."

This is the whole averment; and we say that it is insufficient, for the following reasons: It does not, in terms, aver a marriage, but avers what is, at most, circumstantial evidence of marriage. An agreement to live together as man and wife, is not *per se* a marriage, even though followed by actual cohabitation. The complaint does not state facts, but evidence, and it is argumentative and indirect.

In a case of this sort, it is clear that an actual marriage is necessary. It is not one of those cases in which a man is estopped on grounds of public policy or private right from denying that he is married to a woman; as when a tradesman has trusted a woman on the faith of her being married to a man who has held her out to the world as his wife. In such cases, the law will not permit the truth to be proven, because it would do injustice, and probably work a fraud.

But here, the person claiming to be the wife assuredly has no higher equities than the relatives of the deceased; for if, instead of being married, she lived with deceased as his concubine, it was her own fault, and she can blame herself alone.

The statute law of this state concerning marriages, though it prescribes no particular forms or ceremonies, evidently contemplates that some form should be followed.

In Graham *v.* Bennet, 2 Cal. R., 506, this Court said, that an " open avowal of the intention, and an assumption of the duties, are sufficient to render the marriage valid and binding." This is a mere repetition of a rule, that if the contract is made *per verba de presenti*, though not consummated by cohabitation—or if it is made *per verba de futuro*, and be followed by cohabitation,

it amounts to a valid marriage, in the absence of civil regulations to the contrary.  2 Greenleaf on Evidence, § 460; 1 Bright's Husband and Wife, 1–10, notes.

But there must be such a contract, in clear and explicit terms, although without regard, perhaps, to form.  In the case of Hantz, Adm'r, etc., *v.* Sealy, 6 Binney's R., 405, cited by appellant, it was a question whether Jacob Hantz and Mary Sealy were legally married.  It was proved that they had cohabited as man and wife.  It was also proven that Hantz said to Mrs. Sealy, in the presence of a witness, " I take you for my wife;" and she, being told that if she would say the same, it would be a complete marriage, replied, " to be sure, he is my husband good enough."  The Court held, that although marriage might be completed by any words in the present time, without regard to form, yet the words proven did not constitute a marriage.

Do the words set forth in the complaint amount to such a contract as is contemplated in the books?  Was it not merely a contract for cohabitation, without reference to the matrimonial tie?  A contract to live together as man and wife, is neither *per verba de presenti*, nor *per verba de futuro*.  The word " as," is a term of comparison—and the words used in the complaint simply mean that the plaintiff and deceased should live together like man and wife; that is, she was to be faithful to him, and he was to be faithful to her, as long as they remained connected.  Undoubtedly, this is the true rendering of the form of words contained in the complaint.  The arrangement consummated by them was no more than one of those temporary arrangements so common in the large and dissolute cities of the old world, and so frequently seen in our own State during the earliest, and, we may hope, the most scandalous period of its history.  To bestow the name of marriage upon one of those lewd connections, is to prostitute and pervert that chaste and pure word.  It is a curious and significant fact, that the plaintiff does not even sue by her marital and, of course, proper name, but comes into Court under an alias—" Margarette Letters, alias Margarette Cady."

But, again, the complaint does not set forth facts, but evidence.  If any rule of pleading deserves to be called fundamental and essential, it is that rule which requires a pleading to state facts; that is, that the pleader must state facts as contradistinguished from the evidence by which these facts are to be proven.  This rule is common to the civil and the common law—to Courts of Law, and Courts of Equity—to pleading at common law, and pleading under our Practice Code.  1 Chitty on Pl., 214, 225, 540; Story's Eq. Pl., §§ 7, 23; Mitford's Eq. Pl., 7, 37; Practice Act, § 39.

It is a branch of the same rule, that pleadings should be direct and to the point—not argumentative or inferential.

Letters *v.* Cady.

In this case, to use the language of the Court of Common Pleas in the case of Hantz *v.* Scaly, above cited, and which was declared by the Supreme Court to be correct—"the cohabitation and acts of the parties did not amount to marriage, but were facts from which a marriage might be inferred. They were circumstances on which to ground a presumption of marriage, and might be met by circumstances, showing that they were founded on some fact unconnected with marriage."

We might admit the circumstances set forth in this complaint to be true, and yet we can easily conceive that the plaintiff and the deceased were not married. The complaint, at most, states evidence, which, if confirmed by testimony, might raise in the mind of the Court or jury, a presumption of marriage.

Field, J., delivered the opinion of the Court—Baldwin, J., concurring.

The plaintiff sues, claiming to be the widow of W. J. Cady, for her distributive share of his estate, under the statute; and for the disposition of the appeal it is only necessary to consider whether she has sufficiently alleged in the complaint her marriage with the deceased.

The complaint avers that, in 1853, the plaintiff was keeping a restaurant and public saloon in Grass Valley, and that she had accumulated in this business five or six hundred dollars; that the deceased made proposals of marriage to her, which she accepted, and consented to live with him " as his true and lawful wife ;" that in accordance with his wishes, she relinquished her business, sold her property, " and from thenceforth lived and cohabited with him as his wife, always conducting herself as a true, faithful, and affectionate wife should do."

These are all the averments respecting the marriage, and they are entirely insufficient. The facts alleged do not constitute a marriage. They are only *primâ facie* evidence of a marriage. Living together " as man and wife," is not marriage, nor is an agreement so to live a contract of marriage. From the character of the allegations, and the pregnant fact that the plaintiff does not even sue in her marital name, except under an *alias*, we are led to the inference that the arrangement between her and the deceased was intended to be temporary, and the connection one to which it would be ·a perversion of language to apply the name of marriage.

Judgment affirmed.