## IN RE RASH'S ESTATE. ELIZABETH HADLEY, APPELLANT, *v.* MANUEL RASH ET AL., RESPONDENTS.

[Submitted May 19, 1898. Decided June 6, 1898.]

### *Marriage—Presumption—Burden of Proof.*

Plaintiff and the intestate, Daniel Rash, were married in 1858. In 1864 the intestate left plaintiff and never lived with her thereafter. In 1872 plaintiff married one "H," and they lived together as man and wife thereafter. In 1894 the intestate and the defendant Berthena Rash intermarried and lived together as man and wife until the death of intestate. This action was brought by plaintiff to obtain a decree adjudging her to be the surviving widow of Daniel Rash, and as such to be entitled to share in the distribution of his estate. There was no evidence of any divorce dissolving the marriage relation existing between plaintiff and the deceased; although the complaint alleged that no such divorce had ever been granted, which was denied by the answer. *Held*, that, in the absence of any evidence to the contrary, the presumption is that the marriage between intestate and the defendant Berthena Rash was valid, and that the burden was on plaintiff to prove that no divorce had been granted.

*Appeal from District Court, Missoula County; F. H. Woody, Judge.*

ACTION by Elizabeth Hadley against Manuel Rash and others to establish her claim as widow of Daniel Rash, deceased. From a judgment for defendants, plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action brought by plaintiff for a decree adjudging her to be the surviving widow, and as such entitled to share in the distribution of the estate, of Daniel Rash, who died intestate in Missoula county upon the 14th day of March, 1895. The record shows the findings of fact to be substantially as follows, and which findings, it is conceded, are supported by the evidence: First, that the plaintiff and Daniel Rash were married in Iowa about November 28, 1858, and lived together as man and wife until 1864, when Daniel Rash left the plaintiff, going west, and never lived with the plaintiff in any relation after that time; second, that Manuel Rash and Elvira Lowdermilk are children of plaintiff and Daniel Rash, and as such entitled to share in the distribution of the estate of Daniel Rash; third, that in the year 1872 the plaintiff intermarried with one William Hadley, and they lived and cohabited as man and wife from the date of their marriage until the death of · Daniel Rash; fourth, that Berthena C. Rash and Daniel Rash were formally married in the county of Missoula, this state, about the month of January, 1894, and lived and cohabited together as man and wife from the date of their marriage until the death of Daniel Rash. The court approved the findings of the jury, and decided, as a conclusion of law, that the defendant Berthena C. Rash was at the time of the death of said Daniel Rash his legal wife, and as such is now his legal surviving widow, and entitled to share in the distribution of his estate. In accordance with the findings of fact and conclusions of law, the court decreed the defendant Berthena C. Rash to be the legal surviving widow of Daniel Rash, deceased, and as such entitled to share in the distribution of his estate. The right of Manuel Rash and Elvira Lowdermilk to share as heirs in the distribution of the estate of Daniel Rash is not questioned by any of the parties to this suit. The plaintiff appeals from the judgment of the court decreeing Berthena C. Rash to be the lawful surviving widow of Daniel Rash, deceased, and as such entitled to share in the distribution of his estate.

*J. M. Dixon* and *Bickford, Stiff & Hershey,* for Appellant.

(Citing: Vol. 2·Nelson on Divorce and Separation, §§ 576–577; *Boulden* v. *McIntyre*, 21 N. E. 446; *Dixon* v. *People*, 18 Mich. 84; *Harris* v. *Harris*, 8 Ill. App. 57; *Jackson* v. *Jackson*, 94 Cal. 454; *Ellis* v. *Ellis*, 13 N. W. 65; *Barnes* v. *Barnes*, 57 Io. 851.)

*Thos. C. Marshall* and *Jos. K. Wood*, for Respondent Berthena C. Rash.

Every reasonable and fair presumption will be indulged for the purpose of upholding a marriage, and establishing the legitimacy of the offspring. When the celebration of a marriage is·once shown, the contract of marriage, the capacity of the parties, and in fact everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed. (*Cartwright* v. *McGowan*, 121 Ill. 396–7 and cases cited; 1 Bishop on Marriage and Divorce, § 457; Lawson on Presumptive Evidence, 104, 107; *People* v. *Calder*, 30 Mich. 85; *Boulden* v. *McIntyre*, 21 N. E. 445; *Erwin* v. *English*, 23 Atl. 753; *Johnson* v. *Johnson*, 114 Ill. 611; *Cartwright* v. *McGowan*, 121 Ill. 406; *Harris* v. *Harris*, 8 Ill. App. 57; *Carroll* v. *Carroll*, 20 Tex. 731; *Hull* v. *Rawls*, 27 Miss. 471; *Yates* v. *Houston*, 3 Tex. 449; *People* v. *Dixon*, 18 Mich. 84; *Blanchard* v. *Lambert*, 43 Iowa 228; *United States* v. *Chaves*, *supra*; *In Re Edwards*, 10 N. W. 793; Lawson's Presumptive Evidence, pp. 435–448 and cases cited; Jones on Evidence, §§ 13–100 and cases cited; Greenleaf on Evidence, vol. 1, § 35; Bishop on Marriage and Divorce, § 444.) To require appellant, when she attacked the validity of respondent's marriage to Daniel Rash, in 1894, to overcome the validity of said marriage by showing that the marriage of 1858 has not been dissolved by divorce, was not a violation of any rule of evidence. (Jones on Evidence, vol. 1, §§ 177–8; Greenleaf on Evidence, vol. 1, § 80; Am. and Eng. Enc. Law, pp. 42–48.)

*S. C. Murray* and *M. L. Crouch* also appeared for Respondents.

PEMBERTON, C. J.   Counsel for appellant contend the decree of the court adjudging respondent Berthena C. Rash to be the legal surviving widow of the deceased, Daniel Rash, and as such widow entitled to share in the distribution of his estate, is not supported by the evidence, and is contrary to law.   It is argued that this decree is based upon the legal presumption that at some time and place a divorce had been granted, by some court of competent jurisdiction, dissolving the marriage relation entered into between the appellant and Daniel Rash in Iowa in the year 1858.   There is no evidence of such divorce.   Counsel contend that the court held that it was incumbent upon appellant to prove that there had not been such divorce, and that it was error on the part of the court to presume such divorce, in the absence of evidence to the contrary. It is contended that there is nothing in the pleadings suggesting that there ever was such divorce of the parties.   In the complaint, however, there is an allegation that the bonds of matrimony entered into between appellant and Rash had never been dissolved by divorce.   This allegation, and all other allegations not admitted, are denied generally by the answer.

Counsel say that to prove that there had never been a divorce between the parties would have required the appellant to prove a negative, which in this case, they say, would have been impossible.

Treating the subject of proving a negative, Nelson, in his recent work on divorce and separation (Vol. II, Section 580), says, "But this difficulty of proof is not unusual in such cases, since it is the rule that all presumptions shall be made in favor of marriage, where matrimony was the desire of the parties."

The argument of counsel for the appellant overlooks the real issue in this case.   It is an admitted fact that the respondent and Daniel Rash were married in Missoula county in January, 1894, and lived together as husband and wife until the death of Rash.   It is also a fact that the appellant attacks the validity of this marriage, and that this marriage must be decreed to be invalid before appellant can be held to be the legal

surviving widow of Rash, and entitled, as such widow, to share in the distribution of his estate.

What burdens as to proof, then, does the law, under such circumstances, devolve upon the appellant ?

Bishop, in his work on marriage and divorce (Vol. I, Section 457), lays down the rule in such cases as follows: " '*Semper præ- sumitur pro matrimonio.*' Every intendment of the law is in favor of matrimony. When a marriage, therefore, has once been shown, however celebrated, whether regularly or irregularly, or however proved, whether directly or by circumstantial evidence, the law raises a strong presumption in favor of its legality; so that the burden is with the party objecting, throughout, and in every particular, to prove, against the constant pressure of this presumption of law, that it is illegal and void. And it has been considered that the validity of a marriage cannot be tried like any other question of fact which is independent of presumption, because the law, besides casting the burden of proof upon the objecting party, will still presume in favor of marriage, and this presumption increases in strength with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes, in its nature matrimonial, should be such in fact, the law, when administered by enlightened judges, seizes upon all presumptions both of law and of fact, presses into its service all things which can help it, in each particular case, to sustain marriage, and repel the conclusion of unlawful commerce.' ".

In *Boulden et al.* v. *McIntire*, 21 N. E. (Ind.) 445—a case very similar to the one at bar, though not so strong in its ess n-tial facts—the court collates the leading cases involving the questions under discussion here, and comes to this conclusion: "As we have seen from the authorities above cited, the law requires the party who asserts the illegality of a marriage to take the burden of that issue, and prove it, though it may involve the proving of a negative."

In *Klein* v. *Laudman*, 29 Mo. 259, a case involving this doctrine, the court said: "There was not any evidence that the first husband of Mrs. Klein was dead, but, if this had been established; we think she was entitled to the benefit of the favorable presumption that the first marriage had been dissolved by divorce."

We cite, to the same effect, *Erwin* v. *English*, 23 Atl. 753; *Johnson* v. *Johnson*, 114 Ill. 611, 3 N. E. 232; *Carroll* v. *Carroll*, 20 Tex. 731; *Cartwright* v. *McGown*, 121 Ill. 388, 12 N. E. 737; and cases cited in *Boulden* v. *McIntire, supra*.

In *Teter* v. *Teter*, 101 Ind. 129, speaking of the presumptions in favor of the validity of a marriage, the court uses this strong langurge: "The presumption in favor of matrimony is one of the strongest known to the law. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy."

We think the authorities are practically uniform upon the questions presented in this appeal. In this case the appellant took upon herself the burden of showing the marriage between the respondent and Rash to be invalid. In order to do so, it was incumbent upon her to show that there never had been a divorce granted to Rash from her. It was incumbent upon her to show this fact, notwithstanding it required her to prove a negative. It was no more difficult for her to prove that there had been no such divorce, than it would have been for respondent to prove there had been a divorce granted to Rash. The appellant, when she married Hadley, certainly acted upon the presumption that Rash was either dead, or had obtained a divorce from her. Why, then, might not the respondent, with propriety, and lawfully, presume, 30 years after Rash had separated from appellant, that there was no legal impediment in the way of her marriage in good faith with him?

We are unable to discover a circumstance in this case that does not move us strongly to indulge the legal presumption of the validity of the marriage between the respondent and Rash.

We are impelled to such conclusion in the interest of morality, innocence, and the sancity of the marriage relation.   We are given no good reason why we should depart in this case from what seems to us to be a well-settled and just rule of legal presumption, simply to gratify the cupidity of the claimant, that hesitates at no consideration of morality or innocence, or even the preservation of her own good name and honor, in her reckless struggle for gain.

The judgment appealed from is affirmed.

*Affirmed.*

HUNT and PIGOTT, JJ., concur.