AMELIA R. SPARKS et al., appellants,

*v.*

CHARLES S. ROSS et al., respondents.

[Argued March 17th, 1909. Decided June 14th, 1909.]

Ross was married to Cavanaugh in 1873. Upon a feigned issue out of chancery, as to the validity of this marriage, there was evidence that Ross had been married in 1862 to Moose, who was still living, and testified that she had never been divorced. There was evidence that she and Ross had separated shortly after their marriage, had lived in the same county within a few miles of each other thereafter, and that neither had asserted any rights under the marriage of 1862; that in 1870 Moose had contracted another marriage of which a child was born in 1871; that Ross had lived continuously until his death, with Cavanaugh and had children; that Moose had lived continuously from her

marriage in 1870 with Prehl; that the children of Ross by his second wife had been recognized as legitimate by the executor of his father's will.—*Held*, that the question of the validity of the second marriage was for the jury and that it was improper to direct a verdict against its validity.

On appeal from an order of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *74 N. J. Eq. (4 Buch.) 621.*

Mr. *John J. Crandall* (Mr. *Timothy J. Middleton,* on the brief), for the respondents.

Mr. *Thomas E. French,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

After the decision of this court, reported in *73 N. J. Eq. (3 Buch.) 735,* the case was retried and a verdict again directed for the appellants, which was again set aside by the vice-chancellor; this appeal is taken from his order. The reason upon which the vice-chancellor and this court relied in setting aside the former verdict seems to have been misunderstood. The situation is this: Edmund B. Ross was married to Mary Cavanaugh in 1873. If that marriage is valid, the respondents are his lawful issue and are entitled to the property in question under the will of their grandfather, Samuel Ross. It is not questioned that Edmund Ross and Mary Cavanaugh went through the form of a marriage ceremony and lived together as husband and wife in Camden for fifteen years and until his death. The claim of the appellant is that the marriage was invalid because he had previously been married to Maria Moose in 1862. Some question was raised as to the proof of a ceremonial marriage to Maria Moose, but in the view we take of the case that question becomes comparatively unimportant, for we think the evidence is sufficient to establish a valid marriage between Edmund Ross and Maria Moose at that time, provided they were both then free and

capable of contracting marriage. It is proved by Maria Moose, who now calls herself Maria Prehl, that she was at that time unmarried and capable of marrying Ross. As to Ross himself, the only evidence is that of his sister, who testified that she does not know of his having been married prior to his marriage to Moose. If the only question in the case were the validity of the first marriage, this testimony would be sufficient to establish capacity on Ross' part at that time; but the case presents the situation of two marriages, each of which is presumptively valid; neither presumption is so conclusive that the court is justified in taking the case from the jury. The question is one of fact to be decided under all the circumstances of the case, and while no doubt it would be the duty of the court to instruct the jury that the first marriage was presumed to be valid at the time, it would be for the jury to decide whether that presumption was overcome by the fact that Ross deserted Maria Moose soon after, leaving her and a child entirely without support, and that no claim was made upon him by his alleged wife, although they lived in the same county only nine miles apart, either for the support of herself or her child.

Even if the first marriage was a valid one, it does not follow as a necessary conclusion that the second marriage was invalid, for the first marriage may have been dissolved by divorce. The testimony of Maria Moose that she did not know and had never heard of any proceedings taken against her by Ross for a divorce, and her further testimony that she had never been divorced, is not conclusive, since it must be weighed against the presumption in favor of the validity of the second marriage, which is a presumption in favor of the innocence of Ross of the crime of bigamy; of the innocence of his second wife of the crime of fornication; and of the legitimacy of his children. We need not in the present case decide what would be the effect of the testimony of Maria Moose that she had never been divorced, weighed against the presumption of innocence and of legitimacy, if there were nothing else proved. There are other circumstances of great significance. Maria Moose admits not only that she made no claim upon Ross after he deserted her in 1863, but that in

1870 she herself married one Prehl, by whom she had a child born in 1871, and with whom she lived as his wife undisturbed by Ross. In 1873, therefore, when Ross married Mary Cava- naugh, he had good ground for divorce against Maria Moose for adultery, and had had ample time to procure a decree. No search of the records of our court of chancery is proved to have been made such as was made in *Schmisseur* v. *Beatrie* (*Ill.*), *35 N. E. Rep. 524,* but we are not prepared to say that the absence of any record of such a suit in our court of chancery would, of itself, be so conclusive as to justify the court in withdrawing this case from the jury.

Another important fact is the recognition of the legitimacy of the appellants by the executor of their grandfather's will, the husband of one of the appellants.

The proof of the continuance of the marriage relation between Edmund and Maria rests upon her testimony, and in view of the facts stated, and of the necessary inference from Maria's own testimony that she herself was guilty of bigamy if the marriage of Ross had not been dissolved, we think her credibility also was a question for the jury.

We have thus dealt with the question as a question of fact to be decided in view of the conflicting presumptions and all the circumstances surrounding the case. The authorities are clear that as between a first and second marriage the presumption is in favor of the second marriage and this for the very obvious reason that the first marriage does not necessarily invalidate the second.

Of the numerous authorities it will be sufficient to cite those which more nearly resemble the present case: *Dysart Peerage Case, 6 App. Cas. 489,* especially the language of Lord Blackburn (at *pp. 510-511*) ; *United States* v. *Green, 98 Fed. Rep. 63; Hunter* v. *Hunter* (*Cal.*), *43 Pac. Rep. 756; Pittinger* v. *Pittinger* (*Colorado*), *64 Pac. Rep. 195; Erwin* v. *English, 61 Conn. 502; 23 Atl. Rep. 753; Potter* v. *Clapp, 203 Ill. 592; 68 N. E. Rep. 81; Leach* v. *Hall, 95 Iowa 611; 64 N. W. Rep. 790,* with which may be compared a case where the facts were somewhat different. *Casley* v. *Mitchell, 96 N. W. Rep. 725;*

*Smith* v. *Fuller* (*Iowa*), *108 N. W. Rep. 765; Wenning* v. *Teeple* (*Indiana*), *144 Ind. 189; 41 N. E. Rep. 600; Scott's Adm'r* v. *Scott* (*Ky.*), *77 S. W. Rep. 1122; Bowman* v. *Little, 101 Md. 273; 61 Atl. Rep. 223.* A dissenting opinion in this case is reported in *61 Atl. Rep. 657,* and a supplemental one by the chief-justice in *61 Atl. Rep. 1084. Ala. & V. R. Co.* v. *Beardsley, 79 Miss. 417; 30 So. 660; Rash's Estate, 21 Mont. 170; 53 Pac. Rep. 312; Palmer* v. *Palmer, 162 N. Y. 130; 56 N. E. Rep. 501.*

Counsel for the complainant contended that since the feigned issue in form put upon the respondents the burden of proving the affirmative proposition that Edmund B. Ross was capable of contracting a legal and binding marriage in 1873 and was lawfully married to Mary Cavanaugh, the evidence was not sufficient to sustain this burden. No doubt the form of the issue made it incumbent upon the respondents to prove that the marriage to Mary Cavanaugh was a valid marriage; there was a presumption in its favor; whether this presumption and the evidence in its support was sufficient upon the whole to justify a finding in favor of the validity of that marriage was a question for the jury.

We think, therefore, that the vice-chancellor was quite right in ordering a new trial, and the order is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL—14.

*For reversal*—None.