STATE, RESPONDENT, *v.* NEWMAN, APPELLANT.

(No. 5,191.)

(Submitted January 3, 1923. Decided February 21, 1923.)

[213 Pac. 805.]

*Criminal Law—Rape—Defense—Marriage—Evidence—Insufficiency — Common-law Marriage — Witnesses — Wife — Incompetency — Proof Required — Prosecution — Election of Remedies.*

Rape—Several Acts of Intercourse—Prosecution—Election of Remedies—Nonprejudice.
 1. Where, in a prosecution for rape, it appeared that several acts were committed within a brief period under exactly the same circumstances, defendant was not prejudiced by an order of the court requiring the county attorney to elect the act nearest to the date upon which the one charged in the information was alleged to have been committed.

Same—Prosecuting Witness—Wife of Defendant—Incompetency—Proof.
 2. One charged with rape cannot prevent the prosecuting witness from testifying by the bare objection that she is his wife, but must prove the relationship either by examining her on *voir dire* or by evidence *aliunde,* and where this is not done and it appears from the evidence that she was competent to testify, overruling of the objection is not error.

Same—Marriage of Defendant and Prosecuting Witness—May be Disproved, How.
 3. Direct evidence of the fact that the prosecuting witness was not the wife of defendant charged with rape was not necessary, proof by inference having been sufficient.

Same—Marriage—Essentials.
 4. To constitute a marriage the parties must contemplate a present assumption of the relation as distinguished from a future union.

Same—Common-law Marriage—Essentials.
 5. *Held,* that since there is no common law in Montana where the law is declared by the Codes or the statutes, and under section 5695, Revised Codes 1921, consent of the parties to marry is not alone sufficient to bring about the relation but in the absence of a solemnization there must be a public assumption of the relation, there is no common-law marriage in this state where such public assumption was absent.

Same—Marriage—Disputable Presumption.
 6. While the presumption of law is in favor of matrimony and against concubinage, the presumption is a disputable one and is only indulged in where the court is not in possession of all the facts upon which the alleged marriage relation depends.

 3. Proof of nonmarriage of parties in prosecution for rape, see note in **Ann. Cas.** 1912B, 114.

Same—Declaration of Marriage—Purpose.

7. The purpose of a declaration of marriage provided for by sections 5724 and 5725, Revised Codes of 1921, is to authenticate, and does not itself constitute, a marriage, and therefore such an instrument executed by defendant charged with rape and the prosecuting witness and filed on the day before the commencement of the trial and stating that the parties had married on the day on which the alleged crime was committed, was not sufficient to show marriage.

Same—Marriage—Insufficiency of Evidence.

8. In a prosecution for rape where defendant claimed that the prosecuting witness was his wife (she herself testifying that she was), and was therefore incompetent to testify for the state, evidence held insufficient under the above rules to show marriage.

Same—Marriage of Defendant and Prosecuting Witness—Inadmissible Evidence.

9. Where in a prosecution for rape it appeared that defendant and the prosecuting witness had been living together in a rooming-house, a question asked a witness for defendant what he understood from their so living together and if he believed that they were living as husband and wife, was properly excluded as incompetent, irrelevant and immaterial.

Appeal—Error in Instructions—Extent of Review.

10. Under section 9349, subdivision 5, Revised Codes of 1921, the supreme court may not reverse a judgment for error in instructions unless the error was specifically pointed out and excepted to at the settlement of the instructions.

(MR. JUSTICE GALEN dissenting.)

*Appeals from District Court, Missoula County; Asa L. Duncan, Judge.*

HARRY NEWMAN was convicted of rape, and appeals from the judgment and the order denying him a new trial. Affirmed.

*Mr. Donald Loehl,* for Appellant, submitted a brief, and argued the cause orally.

The district court erred in not requiring the state to definitely elect which one of several offenses they relied on for conviction. (*State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596. See *People* v. *Mancuso,* 23 Cal. App. 146, 137 Pac. 278; *People* v. *Scott,* 24 Cal. App. 440, 141 Pac. 945; *People* v. *Williams,* 133 Cal. 165, 65 Pac. 323; *People* v. *Castro,* 133 Cal. 11, 65 Pac. 13; *State* v. *Harris,* 51 Mont. 496, 154 Pac. 109. See *Petty* v. *State,* 11 Okl. Cr. 646, 150 Pac. 91; *State* v. *Browning,* 94 Kan. 647, 146 Pac. 1145.)

If the court fails to require an election, then the law makes the election of the first act disclosed. (*State* v. *Harris, supra; People* v. *Harlan,* 29 Cal. App. 600, 156 Pac. 980.)

The court erred in permitting the evidence of the witness, Agnes Flannigan (Newman), to get before the jury, after the claim was made and evidence introduced that she was the wife of defendant, and in refusing to strike her testimony from the record. The witness was not competent. (*People* v. *Curiole,* 137 Cal. 534, 59 L. R. A. 588, 70 Pac. 468.) As soon as objection was made by the defense it devolved upon the court to inquire into the competency of the witness and ascertain if she was the wife of the defendant, and if it developed that she was, the witness should have been rejected. (*People* v. *Anderson,* 26 Cal. 129.) The action of the court placed the burden of proof on the defendant and required him to prove the fact of marriage as a defense rather than requiring the state to prove the illegality of the marriage, or that they were not married. (*Hadley* v. *Rash,* 21 Mont. 170, 69 Am. St. Rep. 649, 53 Pac. 312; *Boulden* v. *McIntyre,* 119 Ind. 574, 21 N. E. 445; 1 Bishop on Marriage and Divorce, sec. 457; *Jones* v. *Jones,* 63 Okl. 208, L. R. A. 1917E, 921, 164 Pac. 463, 464; *Hunter* v. *Hunter,* 111 Cal. 261, 52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756.)

The district court erred in presuming that the girl was not the wife of the defendant. This presumption was with the state and against defendant all through the trial of the case. Every presumption is in favor of matrimony and that a presumption to the contrary is error. (Par. 30, sec. 10606, Rev. Codes 1921; *Hynes* v. *McDermott,* 91 N. Y. 451, 43 Am. Rep. 677; *Labonte* v. *Davidson,* 31 Idaho, 644, 175 Pac. 588, 590; *Haile* v. *Hale,* 40 Okl. 101, 135 Pac. 1143; *In re Huston's Estate,* 48 Mont. 524, 139 Pac. 458; *Parker* v. *de Bernardi,* 40 Nev. 361, 164 Pac. 645; 1 Bishop on Marriage, 457.

We believe that the evidence in this case shows a clear example of a marriage without solemnization. There can be no question of either capability or consent. Both parties tes-

tified to it, and told of their agreement of marriage. The only question for us to consider then is—did they make a mutual and public assumption of the marital relation? We believe they did. As to what is meant by the phrase "mutual and public assumption of the marital relation," see *O'Malley* v. *O'Malley*, 46 Mont. 549, 588, Ann. Cas. 1914B, 662, 129 Pac. 501; *Kilburn* v. *Kilburn*, 89 Cal. 46, 26 Pac. 636; *Sharon* v. *Sharon*, 79 Cal. 633, 22 Pac. 26.

This public assumption of the marital relation appears in several ways in the present case. First of all, we have the fact that they lived together openly in a public rooming-house; secondly we have the declaration of marriage recorded as provided by law, then we have the girl, repeatedly throughout her testimony, calling the defendant her husband, together with her statement that she is his wife, and further we have their public acknowledgment in open court.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for the state, submitted a brief; *Mr. Foot* argued the cause orally.

The court directed the state to elect and the county attorney announced that he would rely upon the offense stated in the information, to-wit: on or about December 11, 1921, and was informed by the court that he would be confined to the act nearest the said date. Appellant contends that this was not an election and that the trial court committed error in not compelling the state to make a more definite election. There was no error. (16 C. J. 862; *Johnson* v. *State,* 189 Ind. 597, 128 N. E. 693; *State* v. *Biggs,* 57 Wash. 514, 107 Pac. 374; *People* v. *Soto,* 11 Cal. App. 431, 105 Pac. 420; *People* v. *Williams,* 133 Cal. 165, 65 Pac. 323; *State* v. *Crimmins,* 31 Kan. 376, 2 Pac. 574.) The state did not need to elect in this case, and should not have been required to elect, until the state's evidence in chief was all in. (*State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596; *State* v. *Harris,* 51 Mont. 496, 154 Pac. 198.)

Appellant claims that a common-law marriage existed between himself and prosecuting witness, which was entered into as they occupied the same bed on the third night, but he admits that they told no one about it because he thought they "could keep it a blank and not be detected." After his arrest, his counsel was consulted and a declaration of marriage was prepared, signed and filed. This declaration was signed four days and filed one day prior to the commencement of the trial on February 7, 1922.

This "common-law marriage" relied upon by the appellant bears all the ear-marks of being a mere subterfuge and afterthought to escape the consequences of his crime. He made no claim of marriage when he was arrested, but upon the contrary made statements indicating that such a condition had not entered into his mind.

The question, therefore, whether appellant and the witness had contracted a "common-law marriage" was one of fact to be determined by the jury from the evidence submitted. "Consent alone will not constitute marriage; it must be followed by a solemnization, or by mutual and public assumption of the marital relation." (Sec. 5695, Rev. Codes 1921; 28 R. C. L. 488, sec. 73; *State* v. *Hancock,* 28 Nev. 300, 6 Ann. Cas. 1020, 82 Pac. 95; *Flanagan* v. *State,* 25 Ark. 92; *Rickerstricker* v. *State,* 31 Ark. 207, 209; *Sims* v. *State,* 30 Tex. App. 605, 18 S. W. 410; *Oborn* v. *State,* 143 Wis. 249, 31 L. R. A. (n. s.) 966, 126 N. W. 737; *Morrill* v. *Palmer,* 68 Vt. 1, 33 Atl. 829, 833; *Hill* v. *State,* 41 Ga. 484.) The burden, therefore, was upon appellant to show that the illicit cohabitation between himself and Agnes Flannigan, which both admit, was legally changed to lawful cohabitation by means of the alleged common-law marriage, and that question was submitted to the jury and decided against appellant.

MR. COMMISSIONER FELT prepared the opinion for the court.

The defendant was convicted of the crime of rape, alleged to have been committed upon the person of one Agnes Flanni-

gan, a female child under the age of eighteen years, and not the wife of the defendant. He was sentenced to a term of imprisonment in the state prison, and appealed from the judgment of conviction and the order overruling his motion for a new trial.

Nineteen specifications of error are urged as ground for reversal. One group relates to alleged error on the part of the court in not requiring the county attorney to make a more definite election as to which of several acts he relied upon for conviction.

The undisputed evidence in the case shows several acts of [1] sexual intercourse, all occurring within a period of two weeks, or less, prior to the arrest of the defendant. The complaining witness and the defendant himself fix the date of the first act as the twenty-seventh day of November, 1921. The others occurring at varying intervals upon dates of which neither party could be certain, the last a few days prior to the arrest. The information charges commission of the act on the 11th of December, and the county attorney, at the suggestion of the court, was required to elect the act nearest to that date. Since all of the acts were committed within a brief period, and under exactly the same circumstances, the defendant was not prejudiced in any degree by not requiring the county attorney to make a more definite election. (*State* v. *Harris*, 51 Mont. 496, 154 Pac. 198.)

The principal contention, however, and the only one that requires serious consideration, raises the question as to whether or not the complaining witness, Agnes Flannigan, was the wife of the defendant.

Before any testimony was given in the case, upon Agnes [2] Flannigan being called and sworn, the defendant interposed an objection to her being permitted to testify in the case on the ground that she was the wife of the defendant. The court ruled: "We will presume that she is not. The objection will be overruled." The court's preliminary remark was highly objectionable, but the ruling was correct. The defend-

ant could not place a seal upon the lips of the witness by merely asserting incompetency by reason of the alleged relationship. There is no presumption that a witness is incompetent; and upon this preliminary matter the party insisting on the disability to testify must prove that the relationship of husband and wife exists. (Jones on Evidence, sec. 744; Greenleaf on Evidence, sec. 339; Wharton, Criminal Evidence, 10th ed., sec. 390. "The orthodox division of function between judge and jury allots, without question, to the judge the determination of all matters of fact on which the admissibility of evidence depends; and therefore of the facts of a witness' capacity to testify." (Secs. 10698, 10699, Rev. Codes 1921; Wigmore on Evidence, sec. 487.)

"There are two modes by which the competency of a witness may be determined; and the party who objects to a witness may, of right, adopt either. He may examine the witness upon his *voir dire,* or he may prove the alleged incompetency by evidence *aliunde.*" (*People* v. *Anderson,* 26 Cal. 130.) At the conclusion of the *voir dire* examination, or from the evidence *aliunde,* the court determines whether or not the witness is competent. (*State* v. *Hancock,* 28 Nev. 300, 6 Ann. Cas. 1020, 82 Pac. 95; *Flanigan* v. *State,* 25 Ark. 92, 95; *Rickerstricker* v. *State,* 31 Ark. 207, 209.) The defendant did not avail himself of either of the means open to him for testing the competency of the witness. He did not ask to examine the witness on *voir dire,* nor ask the court to do so. Neither did he request the right to produce evidence *aliunde* to prove the alleged relationship. It is not error for a trial court to permit a witness to testify, without *voir dire* examination, over an objection as to her competency, if it appears from all of the evidence given at the trial that she was competent. (*State* v. *Simes,* 12 Idaho, 310, 9 Ann. Cas. 1216, 85 Pac. 914.)

Upon cross-examination counsel for defendant asked the witness Agnes Flannigan: "Q. Are you the wife of the defendant? A. Yes, sir." Motion was then made to have all of her testimony stricken from the record and witness excused

on the ground that there was then evidence to show that she was the wife of the defendant, and incompetent to testify. The motion was overruled. If error was committed by this ruling, it was cured by the evidence introduced later.

At the conclusion of the state's testimony counsel for the defendant moved that the case be dismissed and the jury be instructed to bring in a verdict of not guilty on the ground that the state had not proved that the complaining witness was not the wife of the defendant. Direct evidence of this fact [3] is not necessary to sustain a conviction. It may be proven by inference. (*People* v. *Bonzani,* 24 Cal. App. 549, 141 Pac. 1062; *People* v. *Allison,* 44 Cal. App. 118, 185 Pac. 992.) The state introduced testimony to prove that at the time of the defendant's arrest he was living with complaining witness. The girl then, in the defendant's presence, stated that her name was Agnes Flannigan. At first they denied having had sexual intercourse, and made no pretense of being married at that time. At the time of defendant's arrest, and several times later, he expressed a willingness to marry the girl, if the officers would give their permission. There was sufficient evidence from which the jury could infer that the complaining witness was not the wife of defendant, and the court committed no error in overruling the motion for a directed verdict.

The defendant was not content to stand on his motion, or to submit the case to the jury and rely upon the weakness of state's case for an acquittal. He took the stand and testified in his own behalf. He admitted having at least four acts of intercourse with the girl within two weeks prior to his arrest. The defense is that an unsolemnized, or "common-law," marriage was consummated immediately prior to the first act of intercourse. He testified quite particularly in regard to the manner of consummating the alleged marriage. From his own testimony in that regard, there is abundant evidence to support the verdict. "Where the testimony of one of the parties to an alleged contract of marriage shows that there was no

contract by words *in praesenti*, all other evidence on the subject is of no importance." (*Tholey's Appeal*, 93 Pa. 36.)

Our statute defining marriage (sec. 5695, Rev. Codes 1921) [4–8] reads as follows: "Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by mutual and public assumption of the marital relation." The necessary consent need not be expressed in any particular form. (Sec. 5697, Rev. Codes 1921.) In a proper case it may even be implied from the conduct of the parties. (*Univ. of Mich.* v. *McGuckin*, 64 Neb. 300, 57 L. R. A. 917, 89 N. W. 917.) But the consent, whether in express words, or implied from conduct, must always be given with such an intent on the part of each of the parties that marriage cannot be said to steal upon them unawares. One cannot become married unwittingly or accidentally. The consent required by our statute, as well as the statutes of every state, and by the common law, must be seriously given with the deliberate intention that marriage result presently therefrom. The words manifesting the consent may be spoken in the face of the church, or immediately preceding an act of sexual intercourse, as claimed in this case. But they must always be spoken by those who know and intend that matrimony in full form shall be the result. Marriage cannot be created piecemeal. It comes instantly into being, or it does not come at all. If anything remains to be done before the relationship is completed in contemplation of the parties themselves, there is no marriage.

"In order to constitute a marriage *per verba de praesenti*, the parties must agree to become husband and wife presently. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere

future union. (Lord Brougham in *Queen* v. *Millis*, 10 Cl. & F. 534, 708, 730; *Clark* v. *Field*, 13 Vt. 460.)'' (*Beneficial Assn.* v. *Carpenter*, 17 R. I. 720, 24 Atl. 578.)

In this connection we will examine the testimony of the defendant: ''When she first got in bed with me that night, the only objection I made was that she couldn't sleep with me unless she became my wife. That was the understanding; yes, sir. Asked if that is what I told her, I will say that I told her that no woman would ever sleep with me that way unless she was my wife. She said that she would never leave the place, and I told her to write a letter to her mother for the consent to a church marriage. When she said that she would never leave the place, I took it for granted that she meant that way, and I told her that she would have to be my wife. * * * Asked if I noticed any difference in Agnes Flannigan Newman's actions on the morning after this agreement, I will say why, only that she was more tickled than she was before, to know that we were going to be married soon.''

In the absence of such statutory provision as we have, requiring public assumption of the marital relation, keeping it secret does not invalidate the marriage. (*Dalrymple* v. *Dalrymple*, 2 Hegg. Con. 54, 3 A. R. C. 1; *Hulett* v. *Carey*, 66 Minn. 327, 61 Am. St. Rep. 419, 34 L. R. A. 384, 69 N. W. 31; 3 A. R. C. 329.) Our attention has not been called to the statute of any other state similar to ours in that respect. The California statute, in effect at the time that we adopted the Code, in lieu of a solemnization, required a mutual assumption of marital rights, obligations, and duties. This assumption was not required to be public. An agreement to keep it secret did not invalidate the marriage if every other necessary element were present. (*Sharon* v. *Sharon*, 79 Cal. 633, 22 Pac. 26, 131; 3 A. R. C. 195.) A few other states have a statute similar to that of California, but in the vast majority of the states a common-law marriage is recognized; but not so in Montana. ''In this state there is no common law in any case where the law is declared by the Code or the statute.'' (Sec.

10703, Rev. Codes, 1921.) "The Codes establish the law of this state respecting the subjects to which they relate." (Sec. 4, *Id.*) Our Codes have modified the common law with respect to marriage by requiring, in the absence of solemnization, a mutual and public assumption of the marital relation.

We will examine the testimony of the defendant himself to see if the element of publicity required by our statute is present. "Asked if I ever told any one that I was married to this girl, Agnes, I will say that I don't think I ever told that I was married—only that I had a cook and a housekeeper. As to whether or not I ever told a single person that she and I had been married, I will say that I hadn't told nothing. That was between the two people, her and I. I never told you anything about it, nor any one else, not until I told it to you, just now. To-day is the first time that I can remember that I ever told anyone that she and I were married; that's the first day I can remember, is to-day. * * * Asked why I didn't tell people of my marriage—that is, of this agreement—previous to the time this came out, and previous to the time that I did announce it, well, we kept it a blank. We thought we could get a solemnized marriage without being detected."

Why the defendant did not inform anyone of his marriage prior to his arrest is answered by another quotation from his testimony as follows: "I first found out that there was such a thing as a common-law marriage by the authority of my attorney; that is right. That was somewhere about the 15th of December, was it, after I was arrested? Asked if that is the first time I actually knew of it, I will say that I don't know as I actually knew it; no." How could he publicly assume a relationship which he, himself, did not know was in existence?

There are many text-books on the law with reference to marriage, and many cases construing and applying the law. In some a marriage has been held to exist and in others it has not, each case depending upon the particular facts presented. None, however, hold contrary to what is herein expressed.

The defendant in his brief quotes from *Hadley* v. *Rash*, 21 Mont. 170, 69 Am. St. Rep. 649, 53 Pac. 312, to the effect that "Presumption in favor of matrimony is one of the strongest known to the law. The law presumes morality, and not immorality, marriage, and not concubinage; legitimacy, and not bastardy."

*In re Huston's Estate*, 48 Mont. 524, 139 Pac. 458, is also cited in support of this proposition. There is no doubt that the law does indulge in such a presumption. However, it has always been held that this is a disputable presumption. (*Van Tuyl* v. *Van Tuyl*, 57 Barb. (N. Y.) 235; *Quackenbush* v. *Swortfiguer*, 136 Cal. 149, 68 Pac. 590; *Pegg* v. *Pegg*, 138 Iowa, 572, 115 N. W. 1027; *Letters* v. *Cady*, 10 Cal. 533; *Cross* v. *Cross*, 55 Mich. 280, 21 N. W. 309; *In re Terry's Estate*, 58 Minn. 268, 59 N. W. 1013; *Clark* v. *Field*, 13 Vt. 460; *Morrill* v. *Palmer*, 68 Vt. 1, 33 L. R. A. 411, 33 Atl. 829, 831; *Hutchins* v. *Kimmell*, 31 Mich. 126, 18 Am. Rep. 164.)

In *In re Terry's Estate, supra,* the court held that the party asserting the marriage relationship had rebutted the presumption of marriage by her own testimony. One of the controlling factors in that case was that she herself did not know that the claim of marriage could be plausibly asserted, until so advised by her counsel. The presumption was likewise overcome in the same manner in *Pegg* v. *Pegg, supra;* likewise in *Appeal of Reading Fire Ins. & Trust Co.,* 113 Pa. 204, 57 Am. Rep. 448, 6 Atl. 60. The presumption in favor of marriage is only indulged in where a court is not in possession of all the facts upon which the alleged relationship depends. That was the case in *Hadley* v. *Rash, supra;* also in *In re Huston, supra,* and *Hutchins* v. *Kimmell, supra.* In the present case the court had the testimony of both contracting parties, and the testimony of the defendant himself upon the matter shows that the words spoken at the time of the alleged marriage did not contemplate a present marriage relationship, and that he did not himself understand that a marriage was being consummated at the time. "All other evidence on the subject is of no importance." (*Tholey's Appeal, supra.*)

The defendant and the complaining witness, on the third day of February, 1922, executed a declaration of marriage, attempting to embody the requirements of sections 5724 and 5725 of the Revised Codes of 1921, which declaration was filed on the sixth day of February at 5:45 o'clock P. M., the trial beginning on the seventh day of February. It is not suggested by counsel for the defendant, who acted as notary in taking the acknowledgment of the parties to the declaration, that this constitutes a marriage in itself. It does not contain a present promise to enter into the marriage relation, but refers back to the alleged contract of marriage on the 27th of November, 1921. In *Toone* v. *Huberty*, 104 Cal. at 260, 37 Pac. 944, the supreme court of California held that a declaration conforming in all respects to the requirements of section 75 of the Civil Code, which is identical with section 5724 of our Code, did not constitute a marriage. Independent of the declaration, there must be all of the elements necessary before a marriage can result. The declaration was provided by statute for the purpose of authenticating a marriage. It takes the place, in an unsolemnized marriage, of the certificate filed by the officiating magistrate or clergyman in the case of a solemnized marriage.

From the foregoing it would appear that the court and jury were warranted in reaching the conclusion that there was no marriage between the defendant and the complaining witness, either at the time of the commission of the alleged offense or at the time of the trial, and there was no error in that behalf.

The only evidence offered by the defendant which was [9] excluded by the court, and upon which ruling error is urged, is with reference to the witness Lee Parmelee who was asked, ''Now what did you understand from that,'' and ''Did you believe at that time that they were living there as husband and wife?'' After both questions the court sustained an objection upon the ground that the same were incompetent,

irrelevant and immaterial, and in this ruling there was no error.

In his specification of error No. 14 the defendant raises an **[10]** objection to the action of the trial court in modifying his offered instruction No. 14. This court is prohibited by statute from reversing a case for error in instructions unless the same is specifically pointed out and excepted to at the settlement of the instructions. (Sec. 9349, subd. 5, Rev. Codes 1921; *State* v. *Thomas,* 46 Mont. 468, 128 Pac. 588.) No useful purpose can be served by commenting on the action of the court in that regard. The instructions of the court, as a whole, fairly state the law in regard to unsolemnized marriage, and were sufficiently favorable to defendant. There was no error in refusing any of the defendant's offered instructions.

The evidence was sufficient to sustain the verdict of guilty. Since there was nothing else before the court upon which a new trial might be granted, the court did not err in denying the same.

We recommend that the judgment of conviction and the order overruling the motion for a new trial be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*

MR. JUSTICE COOPER: I concur in the foregoing opinion. I do not think the defendant was denied any of his constitutional rights. The remark of the trial judge would not have been objectionable had he told the jury that the statement had to do entirely with the competency of the witness, and not to the weight of her evidence; nor do I think the defendant was unduly punished.

But there is another and more serious aspect to this prosecution. The state's witness, a mere child, for she was then barely sixteen, from the moment of her induction into the foul atmosphere of the scene of her undoing to the end of the trial, was "more sinned against than sinning." The mother—to her credit

—prompted by a natural desire, as she doubtless was, to shield the child from the humiliation attendant upon a trial, not only advocated, but sanctioned, a form of marriage which, had it been legally consummated, might in a measure have effaced the taint which now clings to the unfortunate victim. Had the prosecuting officer been more intent upon shielding the innocent than he was in punishing the guilty, he would not only have avoided the degradation so fatal to her moral fiber, but healed, to some extent, at least, the wound that is now festering on the body politic. To my mind, the aims of society and the policy of the law would have been better subserved by the allowance of a legal marriage between the central figures in this domestic tragedy.

MR. JUSTICE GALEN: I dissent. In my opinion the best purposes of society will not be subserved by permitting the conviction to stand under the facts disclosed from the record in this case. The district judge, at the outset of the trial, when objection was interposed by the defendant to the competency of Agnes Flannigan as a witness against him on the ground that she was his wife, said: "We will presume she is not [the wife of the defendant]. The objection will be overruled." There is no such presumption in the law. In fact, all of the presumptions are to the contrary. Among the disputable presumptions specified by statute is that "a man and a woman deporting themselves as husband and wife have entered into a lawful contract of marriage." (Sec. 10606, subd. 30, Rev. Codes 1921.) "Every intendment of the law is in favor of matrimony. * * * The presumption of matrimony is one of the strongest known to the law. The law presumes morality, not immorality, marriage, and not concubinage, legitimacy, and not bastardy." (*Teter* v. *Teter*, 101 Ind. 129, 51 Am. Rep. 742; *Hadley* v. *Rash*, 21 Mont. 170, 69 Am. St. Rep. 649, 53 Pac. 312; in *In re Pusey's Estate*, 173 Cal. 141, 159 Pac. 433; *Jones* v. *Jones*, 63 Okl. 208, L. R. A. 1917E, 921,

[66 Mont. 180.]

164 Pac. 463; *Hunter* v. *Hunter,* 111 Cal. 261, 52 Am. St. Rep. 180, 43 Pac. 756, 31 L. R. A. 411.)

If the rule announced by the trial court be the correct· one, then the burden is placed upon every man living with a woman under eighteen years of age to prove in defense to a charge of statutory rape the fact of a marital ceremony sufficient to satisfy the statutory requirements; otherwise he is to be held guilty of rape, *prima facie* upon proof of cohabitation. This cannot be, and in my opinion is not ·the law. Every presumption and intendment is in favor of legitimacy of the relationship; and the burden of proof rests upon the state to establish the facts alleged—that the woman is not the wife of the accused. (Subd. 30, sec. 10606, Rev. Codes 1921; *Boulden* v. *McIntire,* 119 Ind. 574, 12 Am. St. Rep. 453, 21 N. E. 445; *Hadley* v. *Rash, supra.*) Moreover, ·I am convinced that the proof sufficiently establishes the fact of marriage. True it is that there was no marriage license issued, nor was there a religious or other ceremonial solemnization, but under our statute neither is a prerequisite. "Marriage is a personal relation arising out of a civil contract to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by mutual and public assumption of the marital relation." (Sec. 5695, Rev. Codes 1921.) And Agnes Flannigan, being over sixteen years of age, was capable of consenting to and consummating the marriage contract. (*Id.,* sec. 5697.) "Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." (*Id.,* sec. 5697.) Here the parties executed and recorded a written declaration of marriage, to which the mother of Agnes Flannigan, defendant's wife, was one of the subscribing ·witnesses. Marriage can thus be consummated without ceremonial solemnization. (*Id.,* sec. 5724.) And, as, such declaration was regularly executed and recorded in advance of the defendant's trial, I think his wife was incompetent as a witness against him. She could

not be examined concerning their relationship without defendant's consent. (*Id.,* sec. 10536.)

"Mutual and public assumption of the marital relation" is clearly shown in this case, as it appears that the defendant and Agnes Flannigan lived together openly, in a public rooming-house, and they executed and recorded a declaration of marriage, as by the statute authorized. Again, Agnes Flannigan, as a witness for the prosecution, said, "I do here publicly acknowledge that I am the wife of Harry Newman," and the defendant in his testimony declared her to be his wife. I think, under the facts, the court should have directed the jury to return a verdict of not guilty. To me it is preposterous to sustain the conviction of the defendant for rape, based entirely upon the testimony of his wife to the effect that they had had sexual intercourse. Both parties were willing, both wished to live together as husband and wife, and the best interests of society demand that they be permitted so to do.

What will become of the girl? And, should she have offspring as a result of cohabitation with the defendant, what is the defendant's responsibility for the support of the girl and their child? How can he make provision for her when imprisoned in the state prison for "not less than three and one-half nor more than seven years"? Answer to these questions must make it obvious to any reasonable person that the conviction should not be permitted to stand, even though the parties did not make public declaration of their relationship until after the defendant had been arrested and informed against. And, although the marriage contract may not be considered to have been fully consummated until immediately preceding the trial of the case, yet, it having been consummated as by the law authorized, then Agnes Flannigan, as the wife of the defendant, was certainly incompetent as a witness to testify against her husband. By marrying him without coercion, even though subsequent to many acts of sexual intercourse, she rendered herself incompetent as a witness against the defendant charged with statutory rape. (*Norman* v. *State,*

[66 Mont. 180.]

127 Tenn. 340, 45 L. R. A. (n. s.) 399, 155 S. W. 135; *State*
v. *Frey,* 76 Minn. 528, 77 Am. St. Rep. 660, 79 N. W. 518.)
In the case last cited, the court said: "The proposition that a
guilty man may defeat the ends of justice by marrying, after
the act, the principal witness for the state, seems at first blush
to be contrary to the dictates of common sense and common
justice; but, when the origin and purpose of the statute are
considered, it will be found that the statute rests upon con-
siderations of sound public policy, which were recognized and
enforced at common law, and, further, that the statute does
not admit of any reasonable construction which does not render
the wife incompetent as a witness against her husband when
charged with an offense against her before the marriage."

To get them married was in the interest of society; to now
destroy the relationship, brand the defendant as a felon, and
set the girl adrift is unwarranted, unreasonable, and a reflec-
tion upon the administration of justice.

Rehearing denied March 26, 1923.