ODD FELLOWS' BENEFICIAL ASSOCIATION OF RHODE ISLAND *vs.*
MARIA H. CARPENTER *et als.*

After a failure to prove a ceremonial marriage, the claim was made before this court that
the parties in question had been married *per verba de presenti.* It appeared that they
had cohabited for some months; it did not appear that they had been generally re-
puted husband and wife; it did appear that the man in his last will spoke of the
woman as his wife, but it also appeared that, owing to his relations to her, he had been
on bad terms with his children.

*Held,* that a marriage *per verba de presenti* was not proven.

Whether such a marriage, if proven, would be valid in Rhode Island is not decided.

. BILL OF INTERPLEADER.

*May* 28, 1892. TILLINGHAST, J.   The respondent, Maria H.
Carpenter, claims that she is the widow of John A. Carpenter, de-
ceased, and as such is entitled to the fund in dispute.   And the
only issue of fact submitted to the court at the trial was, whether
she was his widow.   In support of her claim, she testified that she
kept house for the deceased from October 1, 1888, till February,
1890 ; that her first husband died in December, 1888; that she
and the deceased shortly afterwards agreed to be married to each
other, and in pursuance thereof, on the 13th of February, 1889,
went to Fall River, Massachusetts, where a ceremonial marriage
was solemnized by a clergyman authorized to solemnize marriages,
or before a person who was represented by the deceased to be so
authorized, and whom she believed was so authorized.   She did
not produce any certificate of marriage, or any record evidence
thereof, or any witness to the same.   She could not give the name
of the clergyman who performed the ceremony, nor could she tell
upon what street, or in what part of said city, he resided.   She
further testified that after said marriage she continued to live
with the deceased as his wife till his death, which occurred on
August 3, 1889.   Evidence was also offered that the deceased, on
one or more occasions, spoke of the respondent as his wife, one
witness testifying that he introduced her to him as such ; and also
that they lived together, for a short time before the death of said

John, apparently as husband and wife. It further appeared that the deceased made a will, in which he referred to the respondent as his wife, and bequeathed to her all of his property, and constituted her his sole executrix.

On the other hand, the respondents, the children of the said John A. Carpenter, offered evidence to the effect that in March, 1889, the deceased stated to one of the complainants' officers that he had no wife, and that on being visited during his illness, in the same month, by a member of the order, he spoke of the respondent as " Maria, a woman that keeps house for me." Also that the deceased on one occasion, upon being told that it was reported that he was married, replied that " You must n't believe everything you hear." Upon this state of the proof, the court was not satisfied that any ceremonial marriage between the deceased and the respondent ever took place, and so decided.[1] The respondent now contends that, notwithstanding her failure to prove a ceremonial marriage as set up by her, yet that she has proved a common law marriage, known as a marriage *per verba de presenti*, and hence that she is the widow of said John A. Carpenter, and entitled to said fund.

The question as to the validity of such a marriage has never been decided by this court, nor do we find it necessary to decide it in this case. For, even assuming that such a marriage is valid in this State, yet we are not satisfied that the proof submitted establishes the existence thereof.[2]

Leaving out of account the testimony of the respondent as to a ceremonial marriage, which has already been passed upon by the court, there remains the evidence that, being a married woman, she lived with the deceased as his housekeeper from October, 1888, till the death of her husband in December, 1888, and that thereafterwards, and until August 3, 1889, she continued to live with the deceased in some capacity ; that to two or three persons he introduced her or spoke of her as his wife, while to others he

---

[1] By rescript filed at the April Term, A. D. 1891, the court found that a ceremonial marriage had not taken place.

[2] See opinion of Colt, J., in *Mathewson* v. *Phœnix Iron Foundry*, 20 Federal Reporter, 281, as to the validity of a common law marriage in this State.

denied that he had a wife, and spoke of her as his housekeeper; and finally that he referred to her in his will dated July 19, 1889, as his wife, making her his sole legatee and executrix.

This evidence, taken as a whole, and considered as favorably in behalf of the respondent as the circumstances will permit, shows the fact of cohabitation between the parties, for a period of about five months, contradictory statements made by the deceased as to whether the respondent was his wife, and a will made by him in which he recognized her as his wife.

We do not feel that, upon such proof as this, we should be warranted in holding that even a common law marriage was established.

In order to constitute a marriage *per verba de presenti*, the parties must agree to become husband and wife *presently*. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere future union. Lord Brougham in *The Queen* v. *Millis*, 10 Cl. & F. 534, 708, 730; *Clark* v. *Field*, 13 Vt. 460. Being a civil contract, in so far, at any rate, as the entering into the marriage relation is concerned, it may be effected by any words in the present time without regard to form. *Hantz* v. *Sealy*, 6 Binn. 405, 2 Kent Comment. 7th ed. 51. And like other civil contracts it may doubtless be proved by circumstantial as well as by direct and positive evidence. Thus, as stated by Chancellor Kent: "The consent of the parties may be declared before a magistrate, or simply before witnesses, or subsequently confessed or acknowledged, or the marriage may even be inferred from continual cohabitation, and reputation as husband and wife, except in cases of civil actions for adultery, or in public prosecutions for bigamy or adultery, when actual proof of the marriage is required."

But, while this is so, it does not follow that courts will infer the existence of such a marriage from loose and inconclusive evidence, especially where, as here, such a marriage is in violation of the

penal law of the State, which it is not to be presumed the parties have violated. See Pub. Stat. R. I. cap. 163, § 14.[1]

Proof of reputation, and continuous cohabitation for a long period of time, has been held sufficient to establish a marriage for civil purposes; while proof of cohabitation alone has generally been held to be insufficient. *Commonwealth* v. *Stump*, 53 Pa. St. 132, 135.

The cases cited by the counsel for the respondent, in support of his contention as to the sufficiency of the evidence of cohabitation to establish a common law marriage, are each of them cases in which the evidence was much stronger than in the case at bar. Thus, in *Yates* v. *Houston*, 3 Texas, 433, the parties had cohabited for a period of five years; three children had been born of the union, and they had been officially recognized as husband and wife, and so classed by the census of the colony where they lived. In *Fenton* v. *Reed*, 4 Johns. Rep. 51, the parties had cohabited together as husband and wife, under the reputation and understanding that they were such, from 1800 to 1806, when the husband died; and the wife during this time had sustained a good character in society. In *Rose* v. *Clark*, 8 Paige Ch. 574, the parties lived together as husband and wife, for more than seven years, having children, and holding themselves out to the world as husband and wife, and being regarded by the community as such. In *Donnelly* v. *Donnelly's Heirs*, 8 B. Mon. 113, the proof showed that the parties had cohabited as husband and wife, under the reputation that they were such, for twenty years, and had raised a family of children. In *O'Gara* v. *Eisenlohr*, 38 N. Y. 296, the parties lived and cohabited together for seven years, during all of which time they were received in the communities where they lived as man and wife, and were so regarded and understood by all their neighbors. See, also, *Hicks* v. *Cochran*, 4 Edwards Ch. 107.

In the case at bar, while there is proof of cohabitation for a few months, it does not appear when it commenced, nor does it appear

---

[1] As follows : —

SECT. 14. Whoever shall be married without duly proceeding as by this chapter is required shall be fined not exceeding fifty dollars.

that the parties ever obtained the reputation of being husband and wife. The fact that the deceased referred to the respondent as his wife in his will, and made her his sole legatee and executrix, is not, in our judgment, entitled to much weight, in view of the evidence, which was submitted at the trial, to the effect that a serious unpleasantness had arisen between the deceased and his children, growing out of his relations with the respondent.

We therefore decide that the respondent has not proved that she is the widow of the deceased by virtue of a common law marriage, even assuming that we should be obliged to hold that such marriage, if fully proved, would be valid in this State.

*Ziba O. Slocum*, for complainant.

*Charles C. Mumford*, for respondent, Maria H. Carpenter.

*Charles E. Gorman & James T. Egan*, for respondents, the children of John A. Carpenter.