No. 12158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

IN THE MATTER OF THE ESTATE OF
GEORGE WILLIAM SWANSON, Deceased.

---

Appeal from: District Court of the First Judicial District,
Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

For Appellant:

Lloyd J. Skedd argued, Helena, Montana.

For Respondent:

Harrison, Loendorf and Poston, Helena, Montana.
Jerome T. Loendorf argued, Helena, Montana.

---

Submitted: September 25, 1972

Decided: OCT 1 8 1972

Filed: OCT 1 8 1972

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is taken from the district court of the first judicial district of the State of Montana in and for the County of Lewis and Clark and represents a contest between the petitions for letters of administration which were filed by Hazel Haefner Swanson, the respondent, and Ralph A. Swanson, the appellant. Hazel Haefner Swanson's petition was based upon her claim that she was the wife of George William Swanson, the decedent. Ralph A. Swanson's petition was based upon the claim that Hazel Haefner Swanson was not the wife of the decedent and asserted his right as surviving brother to be appointed administrator. The district court found Hazel Haefner Swanson to be the wife of the decedent and granted her petition. Petitioner Ralph A. Swanson appeals.

Appellant, in his enumerated specifications of error to this Court, contests the pertinent findings of fact and conclusions of law which bear on the singular legal question of whether or not the relationship between Hazel Haefner Swanson and the decedent meets the criteria of a valid marriage.

George William Swanson died intestate in Helena, Montana, on July 18, 1971, being at the time of his death a resident of East Helena where he owned a dwelling house in which he and Hazel had lived since 1961. Except for the matter now in controversy, George Swanson had never been married and had no children. George Swanson was 62 when he died and was survived by three sisters and by two brothers, one of which is the appellant, Ralph A. Swanson.

George Swanson and Hazel Haefner Swanson met for the first time in July 1957, in East Helena, where she and her husband Herbert Haefner were living. In 1959 a mutual attraction developed between Hazel and George at which time George wanted her to divorce her husband. However, in the same year Hazel followed her husband

- 2 -

to Europe where he had been transferred by the U. S. Army.

In 1961, Hazel Haefner returned to East Helena and obtained a job for a brief time at the Diamond S Ranch at Boulder, Montana, as a waitress. Shortly thereafter, she returned to East Helena and commenced living with George Swanson as his housekeeper until she was divorced in January 1963.

In June 1963, Hazel and George bought wedding rings and mutually declared their marriage. Thereafter they openly lived together and neighbors testified that they assumed them to be married. Throughout the period following 1963, Hazel conducted business transactions, of which records were introduced, under the name of Hazel Haefner whereas in her personal relationships with neighbors and in personal correspondence she received she was known as Hazel Swanson.

Apparently, the relatives of George Swanson chose to give no recognition to the marriage of George and Hazel and simply referred to her as Hazel as did members of the community of Helena and East Helena whose friendships with George were more casual in nature.

Following George Swanson's death, he left an estate consisting of real and personal property which was the subject of a petition for letters of administration filed by Hazel Haefner Swanson on July 20, 1971, followed by a petition in opposition to that of Hazel's which was filed July 23, 1971, by Ralph A. Swanson, brother of the decedent. Hearing was scheduled and proceeded before the district court on August 2, 1971, followed by the submission of proposed findings of fact and conclusions of law by the parties. Following the district court's order appointing Hazel Haefner Swanson the administratrix, the appellant Ralph A. Swanson appealed to this Court.

Appellant contends that under the applicable law of this state including section 48-101, R.C.M. 1947, and case law including Welch v. All Persons, 78 Mont. 370, 254 P. 179, and other cases, the relationship between Hazel and George was illicit at its inception and that the burden of proving that the relationship was changed to a lawful one was never met by the respondent. Appellant argues that there was never a common, uniform, and undivided repute of marriage in the community based upon the evidence produced at the hearing including documents and testimony, and thus George and Hazel's relationship remained illicit. Appellant strongly urges that the continued use of the name Hazel Haefner throughout the alleged common law marriage was persuasive evidence of the intent of the parties.

Respondent's brief is in substance a recitation of the evidence that was produced before the district court and to the substantive nature of which our attention has been directed to in this appeal.

Incorporating the respective arguments and reviewing the facts in this case, it is necessary to set out the statutory language of section 48-101, R.C.M. 1947, to discuss the present case:

> "What constitutes a marriage. Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by mutual and public assumption of the marital relation." (Emphasis supplied.)

In appellant's main argument, it is contended that the relationship of George and Hazel was illicit at the outset in 1961 and remained illicit throughout the period until George Swanson's death in 1971.

In viewing the record, it appears that appellant would

- 4 -

have to prove the allegation that George and Hazel had an illicit relationship from January 1961 until her divorce from Herbert Haefner in 1963 or up to the date of her alleged marriage to George in June 1963. The only testimony relating to that period of time was given by Hazel who testified that she moved into George's house as his housekeeper, that they had separate bedrooms, and that the relationship was honorable. No testimony was shown to disprove the testimony of Hazel and thus appellant's allegation of an illicit relationship would fail.

However, for the sake of argument, assuming appellant's contentions that the relationship at the outset was illicit, appellant argues that the respondent has the burden of proving that the relationship was made lawful by subsequent actions of Hazel and George as stated in Welch v. All Persons.

> " * * * If the relationship was illicit in the beginning the burden is upon the party asserting the validity of the marriage to show that the unlawful relationship changed to a lawful one."

It was on this point that the bulk of the testimony of the witnesses was produced along with a quantity of documents, driver's license, bank accounts, purchase agreements bearing the name of Hazel Haefner. All of this evidence was introduced by the appellant to show no common, uniform, undivided repute of marriage and to show that the use of respondent's former married name of Hazel Haefner was persuasive evidence of the intent of the parties.

In view of all of the testimony given by the various witnesses it is crucial to the determination of the validity of this relationship to determine what exactly was the intent of the parties. Hazel's testimony describing her marriage to George was given as follows:

- 5 -

"Q. When were you and George Swanson married?
A. In 1963, following my divorce.

"Q. And by what type of proceeding were you
married? A. By common consent, I believe you
would say. He slipped the rings on and said,
'I don't know how you say this, but with this
we are married.' And I said, 'I think it's
more formal than that. It's something about
with this ring I three wed.' But George always
got his words tangled up.

"Q. Anyway, he gave you a wedding ring and
said, 'We are married'? A. Yes."

Following that mutual expression, there was a honeymoon and thereafter, Hazel Haefner Swanson continued to use the name of Hazel Haefner on her driver's license, checking account and for other business purposes as was found in the district court's finding of fact No. VIII. Otherwise they lived openly as man and wife in the community of East Helena to the understanding of their neighbors with Hazel receiving personal mail as Mrs. Swanson.

On review of the record in the present case we find sufficient evidence to support the findings of fact and conclusions of law of the district court, and in pertinent point findings of fact VI, VII, VIII, IX and conclusions of law I, which are set out below:

FINDINGS OF FACT

VI.

That the deceased, George W. Swanson, purchased wedding rings for the Petitioner, Hazel Swanson, and that they were married by verbal consent, and by a mutual and public assumption of the marital relation in 1963.

VII.

That from the time George W. Swanson and Hazel Swanson were married in 1963 they lived together as man and wife in East Helena, Montana, until the death of George W. Swanson on or about

- 6 -

the 18th day of July, 1971.

                              VIII.

That after their marriage in 1963, the petitioner, Hazel Swanson, continued to use her former name, Hazel Haefner, for business purposes.

                              IX.

That George W. Swanson and Hazel Swanson were known as man and wife in East Helena, Montana, the community in which they lived.

                    CONCLUSIONS OF LAW

                              I.

That Hazel Swanson was married to the deceased George W. Swanson by verbal consent and by a mutual and public assumption of the marital relation in 1963. "

As a matter of law it should be pointed out that common law marriages entered into validly are recognized. The appellant would place the burden of proof on the respondent to prove the validity or lawfulness of her relationship with George Swanson. A more thorough statement of the law is contained in Welch v. All Persons, which gave proper recognition before the law to common law marriages. It was stated, " * * * The presumption in favor of matrimony is one of the strongest known to the law." Following shortly thereafter in Welch this Court stated, "Every presumption will be indulged in favor of the legality of a common-law marriage in the same way and to the same extent as the law indulges them in favor of a ceremonial marriage."

The vitality of belief in the presumption of the validity of a marriage is found in section 93-1301-7 R.C.M. 1947, /which provides for a disputable presumption regarding marriage:

    "30.  That a man and a woman deporting them-

                            - 7 -

selves as husband and wife have entered into
a lawful contract of marriage."

Every intendment of the law is in favor of matrimony which presumes morality and not immorality, marriage and not concubinage, legitimacy and not bastardy. Hadley v. Rash, 21 Mont. 170, 53 P. 312; State v. Newman, 66 Mont. 180, 213 P. 805. Contrary to appellant's position attacking the validity of the marriage of Hazel and George, absent evidence of an illicit relationship in 1963, the disputable presumption of section 93-1301-7, R.C.M. 1947 must be repelled by the party disputing it and this may be done only by satisfactory evidence. Elliott v. Industrial Accident Board, 101 Mont. 246, 53 P.2d 451.

The district court has entered its findings of fact and conclusions of law based on the evidence before it which was also presented to this Court in this appeal. As stated in Bender v. Bender, 144 Mont. 470, 473, /397 P.2d 957:

> "There is no dispute that in an equity case
> this court should review the evidence as well
> as the law, however, its review is limited to
> the extent necessary to determine whether there
> is substantial evidence to support the findings
> of fact made by the trial court and if such
> findings are sufficient to support the con-
> clusions of law based thereon. (Citing cases.)".

We find sufficient evidence and accordingly the judgment of the district court is affirmed.

_Gene B. Daly_
Associate Justice

We concur:

_John Conway Harrison_

_Frank I. Haswell_

_Wesley Castles_
Associate Justices

Mr. Chief Justice James T. Harrison did not participate in this cause.

- 8 -