MR. CHIEF JUSTICE HASWELL,
dissenting:
I question the trial court’s legal conclusion that the evidence supports a finding of common law marriage.
We have traditionally phrased our test of the existence of a common-law marriage in terms of consent, habit and repute. Cohabitation with habit and repute are merely the means of proving the first, and primary, element of any marriage — consent.
“. . . the consent, whether in express words, or implied from conduct, must always be given with such an intent on the part of each of the parties that marriage cannot be said to steal upon them unawares. One cannot become married unwittingly or accidentally. The consent required by our statute, as well as the statutes of every state, and by the common law, must be seriously given with the deliberate intention that marriage result presently therefrom. The words manifesting the consent may be spoken in the face of the church, or immediately preceding an act of sexual intercourse, as claimed in this case. But they must always be spoken by those who know and intend that matrimony in full form shall be the result. Marriage cannot be created piecemeal. It comes instantly into being, or it does not come at all. If anything remains to be done before the relationship is completed in contemplation of the parties themselves, there is no marriage.
“ ‘In order to constitute a marriage per verba de praesentia, the parties must agree to become husband and wife presently. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes eifect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere future union. (Lord Brougham in Queen v. Millis, 10 Cl. & F. 534, 708, 730; Clark v. Field, 13 Vt. 460.)’ (Beneficial Assn. v. Carpenter, *136 17 R.I. 720, 24 Atl. 578.)” State v. Newman (1922), 66 Mont. 180, 313 P.805.
Newman involved a rape charge and an alleged, and very brief, marriage. Both parties were alive at the time of trial. Our cases more often involve an estate or insurer and a spouse or alleged spouse claiming common law marriage. This is true in the present case.
“[T]he best evidence of the exchange of marriage consent between the parties would come from those who were personally present when they mutually agreed to take each other as husband and wife, and to assume all the responsibilities of that relation.” Travers v. Reinhardt (1907), 205 U.S. 423, 436, 27 S.Ct. 563, 51 L.Ed. 865. Rarely is more than one of those “personally present” available to testify at trial. Our law has developed in an attempt to guide the courts in their examination of surviving facts as proof of the marriage.
A marriage may be inferred from cohabitation and reputation as husband and wife. Once these facts are brought forward, we shift to the opponent the burden of disproving the marriage. Elliott v. Industrial Accident Board (1956), 101 Mont. 246, 53 P.2d 451. The proponent will, however, continue to bear the burden of proof where the relationship was illicit at its inception. Welch v. All Persons (1927), 78 Mont. 370, 384, 254 P. 179, 182. The rule is not a sanction or condemnation. It is, again, our way of protecting the intent of parties who can no longer speak for themselves. In the case relied on in Welsh, the proponent ably bore the burden of proof: a brief meritricious relationship preceded a public proclamation and twelve-year marriage. Howard v. Kelly (1916), 111 Miss. 285, 71 S. 391. In Estate of Swanson (1972), 160 Mont. 271, 502 P.2d 33, the couple, after an allegedly illicit beginning, privately celebrated their marriage and continued to live together for eight years.
The relationship, here, was admittedly illicit at its inception, and the parties knew it was illicit. We need not resort to state law, for the parties, themselves, did not intend a *137 marriage at that time. Pauline testified that later, on September 4, 1981, while still in Washington, the couple agreed that they were married knowing such marriage was illegal under Washington law. I do not question Pauline’s credibility or the weight given her testimony. I do question the effects of time and circumstances. The facts clearly show that the couple lived together as man and wife, but the facts also show a wavering, perhaps tenuous commitment to marriage. Both Michael and Pauline conducted a part of their lives as single people. Michael designated himself as a single person on his employment records. Pauline applied for work, kept her savings accounts, and purchased insurance in her own name without mention of Michael or marriage. A woman’s continued use of her maiden name will not, in itself, defeat a claim of common law marriage. Swanson, supra. Although not legally determinative, Pauline’s willingness to conduct a part of her life — particularly, but perhaps not surprisingly, the financial part of her life — as a single person, raises questions of the certainty of her commitment. Now, when only the rewards remain, human nature may choose to strengthen, in retrospect, that which was tentative at the time.
The couple lived together ten months. They filed separate tax returns, taking advantage of the lower tax accorded two single people rather than be taxed on their combined income as a married couple. We have already voiced our disapproval of marriage claimed only for financial convenience. Estate of Peltomaa (Mont. 1981), 630 P.2d 215, 38 St.Rep. 943. The sáme can be said of a convenient claim of single. Michael and Pauline purchased their mobile home and apartment house as tenants in common rather than as joint tenants with rights of survivorship. Few married couples of moderate means choose to hold property as tenants in common.
We have always offered a true common law marriage the same protections given formal marriage. By necessity, the same duties are imposed. A couple may not walk in and out *138 of their marriage at whim. Michael and Pauline appear to have left the door open.
The majority, in discussing the question of Montana validity of the Washington marriage, fails to give proper attention to our requirement that a man and woman give mutual consent to a present assumption of the marriage status. The majority relies on Travers to hold the earlier consent effective upon the move to Montana. The cases are not analogous. Travers involved only legal recognition of a marriage freely consented to at its inception. The Traverses lived together as man and wife for eighteen years, openly and constantly, conducting themselves towards each other for such a length of time as to produce a general belief that they were married. The Travers will verified the relationship as one of marriage. Travers, supra, 205 U.S. at 441, 27b S.Ct. at 569.
Michael and Pauline lived together for ten months. Their reputation as man and wife is inconsistent, at best. Their steps toward formal marriage or formal solemnization of the marriage that existed, if it existed, were only haltingly taken. There is, here, no bright line or long mosaic of marriage. The facts do not support a finding of common law marriage.
I would reverse.
MR. JUSTICE HARRISON, dissenting:
I concur in the foregoing dissent of Mr. Chief Justice Haswell.